**Richard T. DORMAN, Petitioner-Appellee,**

v.

**Louie L. WAINWRIGHT, Etc., et al., Respondents-Appellants.**

No. 85–3512.

United States Court of Appeals, Eleventh Circuit.

Sept. 9, 1986.

Jim Smith, Atty. Gen., Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, Fla., for respondents-appellants.

James E. Whittemore, Tampa, Fla., for petitioner-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

GARZA, Senior Circuit Judge:

*Nature of the Case*

This habeas corpus appeal involves the denial of petitioner's constitutional right to self-representation as articulated in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Petitioner was charged and convicted of grand theft in the Circuit Court of the 13th Judicial District, Hillsborough County, Florida. After a long complicated procedural history pursuing state relief, petitioner exhausted his state remedies and applied to the federal district court for habeas corpus relief. The United States District Court for the Middle District of Florida found that petitioner's constitutional rights under *Faretta* had been denied and granted the Great Writ. The State of Florida now appeals from this judgment. Finding a grave violation of petitioner's constitutional rights, we affirm.

I. *Facts and Procedural History*

A. *The State Court Proceeding*

On or about January 17, 1978, the State Attorney of Hillsborough County, Florida filed an information charging Richard T. Dorman ("Dorman" or "petitioner") with grand theft in the second degree. From

the outset of the prosecution, Dorman asserted his desire to proceed pro se, which was continually denied. The involved procedural history of Dorman's efforts to be his own lawyer is probably best summarized in the following chronology of events:

| | |
|---|---|
| 1/17/78 | The State of Florida charges Dorman with grand theft in the second degree. |
| 5/8 to 5/30/78 | Dorman files a series of pro se pretrial motions in preparation for trial, all of which were either denied or ignored. Dorman's request to proceed pro se was expressly denied.[1] |
| 6/6/78 | Dorman sends a letter to the trial judge, Hon. Harry L. Coe III, requesting the dismissal of the public defender, Terry Rogers, and expressing his desire to proceed pro se. |
| 7/5/78 | Dorman sends another letter to Judge Coe requesting that he be allowed to proceed pro se.[2] |
| 7/10/78 | Dorman files a petition for a writ of mandamus in the state Court of Appeals requesting an order to Judge Coe to respond to and grant Dorman's pro se motions.[3] 1 Record, doc. 37, Exh. "L". |
| 7/11/78 | Judge Coe denies Dorman's requests and other pro se motions in the letters dated 6/6/78 and 7/5/78. |
| 7/13/78 | Dorman files in the trial court a motion to disqualify Judge Coe on grounds of prejudice. Dorman claims that Judge Coe is prejudiced against him because he will not respond to Dorman's pro se motions or allow him to proceed pro se. In this motion Dorman cites *Faretta v. California.*[4] |

---

* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Dorman made the following pretrial motions: a motion to suppress evidence (5/28/78); a motion to suppress an unduly suggestive identification and a motion for discovery (5/30/78); a request for the removal of the public defender (6/26/78); a motion to compel (6/28/78); a motion to be present at the deposition of witnesses and a petition for a statement of particulars (7/2/78). *See* 1 Record, Doc. 37, Exh. "L".

2. Dorman testified at his federal evidentiary hearing that he had filed a civil suit against the

Office of the Public Defender and his appointed attorney, Terry Rogers, to create a conflict of interest and thereby force Judge Coe to disqualify the public defender's office from representing him. 2 Record at p. 16.

3. Dorman claims to have filed more than one writ of mandamus as well as petitions for rehearing when the writ of mandamus requests were denied. 2 Record at pp. 22–23.

4. Judge Coe denied the request. Dorman testified that contrary to Florida law, Judge Coe, rather than another state judge, ruled on Dorman's motion to disqualify. *See* 1 Record, doc. 35, no. 13.

| | |
|---|---|
| 7/17/78 | The Office of the Public Defender (Rogers) moves to withdraw as counsel for Dorman on grounds that Dorman would not cooperate with his attorney.5 2 Record at pp. 9–11. |
| 7/24/78 | Dorman appeals to the state Court of Appeals Judge Coe's denial of his requests (see 7/11/78). He cites *Faretta* and complains of Judge Coe's refusal to discharge the public defender. |
| Late July/Early August | Dorman files a handwritten federal habeas corpus petition. It is rejected for failure to submit it on the standard forms. *See* 2 Record p. 3; *see also* 1 Record, doc. 7, exh. "M" and the "Reply to Respondent's Response to Show Cause Order" at p. 5. Dorman cites *Faretta* in this petition and complains about the state's refusal to let him proceed pro se. |
| 8/11/78 | The state Court of Appeals denies Dorman's appeal of 7/24/78 without comment.6 |
| 8/14/78 | Dorman's trial was originally scheduled for this date. It is postponed, apparently because of the public defender's withdrawal from the case and the trial court's search for new counsel to appoint. |
| Late August/Early Sept. | Judge Coe appoints Wayne Timmerman to represent Dorman. Dorman learns that Rogers had withdrawn as counsel.7 2 Record at p. 25; *see also* 1 Record, doc. 35, no. 13 at p. 13 and doc. 37, Exh. "D". During a hearing held around this time, Judge Coe gives Dorman the option of accepting newly appointed counsel or hiring his own counsel. Since he can not afford to pay for private counsel Dorman acquiesces to the court's appointment of new counsel. Also, Dorman is prohibited from further speaking up in court. 2 Record at p. 28. |

| | |
|---|---|
| 10/24/78 | Dorman goes to trial and is convicted of grand theft. |
| 10/26/78 | Dorman files a pro se notice of appeal to the state Court of Appeals. 1 Record, doc. 35, no. 5. |
| 11/3/78 | Assistant Public Defender, Wayne Chalu, is appointed to handle Dorman's appeal. |
| 11/14/78 | Dorman sends a letter to the clerk of the trial court inquiring about the status of his trial transcript. 1 Record, doc. 37, Exh. "J". |
| 11/28/78 | Dorman files a pro se motion in the trial court to expedite the preparation of the trial transcript for purposes of appeal.8 |
| 12/8/78 | The public defender (W. Chalu) files an amended notice of appeal. 1 Record, doc. 35, no. 10. |
| 12/12/78 | Dorman discharges Chalu as his attorney. *See* 1 Record, doc. 7 at p. 1 (Florida's "Response to Show Cause Order"); *but cf.* 2 Record at pp. 46–47 (Dorman thinks Chalu may not have been dismissed until May 1979, when the direct appeal was dismissed.) Despite his alleged discharge, Chalu continues to make requests for extensions of time for the filing of an appellate brief on grounds that the trial transcript has not been prepared and remains unavailable to the appellant. 1 Record, doc. 37, Exhs. "E"–"H". |
| 12/14/78 | Dorman files a writ of habeas corpus in the trial court alleging insufficiency of the evidence to support a judgment of conviction. The petition is never processed. |
| 2/6/79 | Dorman files a pro se supplemental appellate brief in the state Court of Appeals. 1 Record, doc. 35, nos. 12, 13. One of his points of appeal is the denial of his right to proceed pro se in the trial court. *Id.* no. 13 at p. 8. |

5. It appears that Dorman was not informed of the withdrawal of Rogers until new counsel, Timmerman, was appointed by the court. *See* 2 Record at p. 25.

6. The Court of Appeals apparently denied the appeal on the ground that it was interlocutory.

7. Timmerman testified at the federal evidentiary hearing that Dorman was reluctant to accept newly appointed counsel. 2 Record at p. 5.

8. Under Florida law Dorman had seventy days from his notice of appeal to file a brief in the court of appeals. *See* 1 Record, doc. 37, Exh. "I".

| | |
|---|---|
| 4/16/79 | Dorman files a "Petition for Remedial Writ" in the state Court of Appeals in an attempt to get the trial record transcribed. 2 Record at p. 41.[9] |
| April or May 1979 | Dorman is advised by a fellow inmate, who was previously a state court judge, to challenge his conviction on grounds of a state speedy trial violation using a Rule 3.850 motion. 2 Record at pp. 30–33. |
| 5/25/79 | Dorman files a motion to dismiss his direct appeal without prejudice so that he may attack his conviction using a Rule 3.850 motion instead. |
| 6/11/79 | The motion to dismiss the direct appeal without prejudice is granted. 1 Record, doc. 35, no. 15. |
| 6/12/79 | Dorman files a Rule 3.850 motion with the trial court along with a supporting brief. 1 Record doc. 35, nos. 16, 17. |
| 7/13/79 | Judge Coe summarily denies Dorman's Rule 3.850 motion with an annotation "should have appealed question". 1 Record, doc. 37, Exh. "K". |
| 7/29/79 | Dorman files a notice of appeal from the denial of the Rule 3.850 motion. |
| 8/29/79 | The Court of Appeals affirms per curiam the denial of the Rule 3.850 motion. 1 Record, doc. 7, Exh. "K4, 1 of 1"; *see also* 377 So.2d 176 (1979). |
| 10/28/79 | Dorman files a state habeas corpus petition (No. 79–1986) in the state Court of Appeals, raising the issue of his denial of his right to proceed pro se. Dorman also files about this time a federal habeas corpus petition (No. 79–528) complaining about the denial of the Rule 3.850 motion by Judge Coe, the adverse disposition on appeal, and the denial of his right to reinstitute his direct appeal. 1 Record, doc. 7, para. IV; *see also* 2 Record at p. 36. |
| 12/3/79 | Federal habeas petition number 79–528 is denied as being without merit. In this petition Dorman complained of the state's refusal to allow him to reinstitute his direct appeal. The district court, adopting the report of the magistrate, found that Dorman's due process right to appellate review of his conviction was not violated, the state having provided him an opportunity to present his claim. The court found further that "the lack of a transcript becomes harmless when viewed in the light of petitioner moving for and securing a dismissal of his appeal". Consequently, "his failure to secure effective review is attributable solely to his own action in dismissing his appeal." 1 Record, doc. 55, Exh. "A" and "B". *See also infra* note 16 for further explanation of this proceeding. |
| 12/10/79 | Dorman files another federal habeas corpus petition (No. 79–1264). 1 Record, doc. 1. |
| 12/14/79 | Dorman files his final federal habeas corpus petition (No. 79–1290). 1 Supp. Record, doc. 1. |
| 1/22/80 | United States Magistrate, Paul Game Jr., for the United States District Court for the Middle District of Florida, enters an order consolidating Dorman's Section 2254 habeas petitions Nos. 79–1264 and 79–1290. |

In petition Number 79–1264, Dorman alleged the following grounds for habeas corpus relief:

1) unconstitutional identification;

2) denial of fair trial due to the prejudice of the trial judge;

3) insufficient evidence to support a conviction.

In petition Number 79–1290, Dorman alleged two other grounds for relief;

4) denial of his right to a speedy trial; and

5) denial of his right to proceed pro se.

In its response to Magistrate Game's show cause order, the state contended that four of the grounds for relief raised by Dorman in the federal forum could have been raised on direct appeal to the state

---

**9.** At the federal evidentiary hearing, a series of letters from the clerk of the state Court of Appeals pertaining to the remedial writ were introduced into evidence as "Composite Exhibit No. 2". 2 Record at pp. 41–43. We could not find these letters in the record.

Court of Appeals.[10] Consequently, Dorman's voluntary dismissal of his direct appeal constituted a deliberate bypass of state procedure as mentioned in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) and therefore, Dorman was precluded from raising these issues in federal court.

To the claim that Dorman was denied a fair trial due to the prejudice of the trial judge, the state argued that this complaint had not been presented in the state court pursuant to a Rule 3.850 motion.[11] Therefore, Dorman had failed to exhaust his state remedies and this claim could not "be the subject of federal habeas review". 1 Record, doc. 7, para. VII.

In response to the state's motion to dismiss on grounds of deliberate bypass and failure to exhaust state remedies, Dorman contended that the deliberate bypass rule of *Fay v. Noia* was inapplicable to these facts because the dismissal of his direct appeal was not done "knowingly and understandingly in order to secure some benefit to the Petitioner". 1 Record, doc. 25. Dorman also claimed that it was the state's undue delay in the preparation of the trial transcript that caused him to dismiss the appeal, which resulted in a vain attempt to obtain speedier review of his conviction. He summarized the countless attempts he had made to present every available ground of relief to the state courts, both at the trial and at the appellate level, and to give the state the opportunity to "apply controlling legal principles to the facts bearing upon his constitutional claim". 1 Record, doc. 25 at p. 3. Dorman contends that his efforts more than satisfied any exhaustion defense that the state might raise. *Id.*

Magistrate Game scheduled an evidentiary hearing to pass on the issues of deliberate bypass and failure to exhaust state remedies. In his report Magistrate Game recommended that Dorman's petition be denied. Specifically, the magistrate found that 1) there was no basis in fact to the claim of an unconstitutional identification of Dorman by the victim because the trial transcript disclosed that the victim was well known by Dorman prior to the crime, 2) the alleged prejudice of Judge Coe against Dorman "relates solely to his dissatisfaction with the judge's (sic) decisions", (3) even if Dorman's factual allegations were true, they were "insufficient to form a basis for disqualification of the judge (sic) nor do the facts asserted establish a basis for habeas corpus relief in this Court", 4) there was sufficient evidence supporting the conviction to pass constitutional muster under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), 5) Dorman's denial of his right to a speedy trial under state law did not present facts that would establish denial of his right to a speedy trial under the Constitution; and 6) the alleged denial of Dorman's right to represent himself at trial "is not borne out of the record."

On this last finding the magistrate held that "[a]t no time, at the trial court level, did he [Dorman] waive his right to appointed counsel" and that even though in a letter to Judge Coe he asked to be relieved of appointed counsel Dorman "did not express a desire to represent himself." Magistrate Game concluded that "[p]etitioner has failed to satisfy his burden of proof that he was forced to accept representation of counsel or that he voluntarily and intelligently elected to defend himself without counsel." The magistrate did not reach nor discuss the issue of deliberate bypass, an argument raised by the state in regard to Dorman's voluntary dismissal of his direct appeal. Needless to say, Dorman timely objected to all of the magistrate's findings and conclusions.

---

**10.** The state alleged that grounds one and three through five could have been raised on direct appeal. It is not clear from the record why the state assumed that ground two, denial of a fair trial due to an unbiased judge, could not have been raised as an issue on appeal as well. *See* 1 Record, doc. 7, at p. 3.

**11.** The Rule 3.850 motion had presented only the claim of a state speedy trial act violation.

The United States District Court, Judge William J. Castagna, rejected the magistrate's report and recommendation in its entirety.[12] Because the magistrate did not explicitly discuss the issue of deliberate bypass, the district court presumed that this issue had been resolved in Dorman's favor. Ruling that the state had not demonstrated that Dorman's dismissal of his direct appeal was an "intentional relinquishment of abandonment of a known right or privilege [citing *Fay v. Noia*]", the court reasoned that the appeal was dismissed because of the incorrect advice of a jailhouse lawyer and that Dorman had gained no tactical advantage from the dismissal of his direct appeal. In short, the state had not demonstrated that Dorman had made a "knowing and informed decision to bypass review under state procedures".

On the merits of Dorman's claims, the court found no basis for relief on the first four contentions but noted that the magistrate's factual findings and legal conclusions regarding Dorman's constitutional rights under *Faretta* were not "realistic". The court rejected the conclusion of the magistrate that Dorman had never explicitly stated that "*he* wanted to represent himself." The only factor that the district court could find in support of the magistrate's recommendation was Dorman's failure to discharge his second appointed counsel (Timmerman), a private attorney, a fact which could be interpreted as a desire by Dorman to represent himself only if the remaining option was the public defender's office. The district court found that "[s]uch conjecture is not justified on this

record" and that "[t]he fact that Tinneman (sic) was not ever discharged and was not a public defender does not negate the fact that the state court trial judge continually denied Petitioner's clear desire to represent himself." The court concluded that Dorman "clearly invoked his right of self-representation sufficient to comply with the teachings of *Faretta v. California* and that the trial court denied him that significant constitutional right." [13]

In response to the district court's order, the state filed a "Motion For New Trial or to Alter or Amend Judgment", which raised the "cause and prejudice" doctrine for the first time in these proceedings.[14] The district court entered a second Order (of June 20, 1985) granting a stay of its first Order pending appeal of the case to the Eleventh Circuit Court of Appeals. The court adhered to its original judgment, however, and entered supplemental findings and conclusions in support of its decision to grant Dorman relief.

In its second Order, the district court addressed several contentions raised by the state in its motion for new trial: 1) that the court had improperly considered Dorman's subjective intent in regard to the dismissal of his direct appeal, 2) that under *Wainwright v. Sykes* Dorman did not satisfy the requirement of cause and prejudice sufficient to obtain review of his claim by a federal district court, 3) that the disposition of Dorman's federal habeas petition No. 79–528 resolved the issue of Dorman's dismissal of the direct appeal in favor of the state, and 4) that Dorman allegedly waived his right of self-representation when he failed to object to the appointment of pri-

---

**12.** As a threshold matter, the court noted that Dorman had served his sentence and had been released from confinement during the pendency of these proceedings, raising a question of mootness. The court determined that because Dorman would continue to suffer collateral consequences from his felony conviction, under the standards of *Carafas v. LaValle,* 391 U.S. 234, 239, 88 S.Ct. 1556, 1560, 20 L.Ed.2d 554 (1968), mootness did not preclude this action from proceeding. 1 Record, doc. 52 (Order of May 1, 1985).

**13.** The court granted the writ of habeas corpus, giving Dorman thirty days to request a new trial and ordering the state to comply within 120 days from the making of such request, provided, however, that Dorman's failure to request a new trial within the time stated would constitute an abandonment of the relief granted and the cause would become moot.

**14.** Citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).

vate counsel (Timmerman) as his trial counsel.

First, the district court noted that it had relied on *Buckelew v. United States* 575 F.2d 515, 519 (5th Cir.1978) in making its finding on the deliberate bypass issue and that *Buckelew* was still good law. Second, in regard to the issue of procedural default under *Wainwright v. Sykes*, the court concluded that Dorman's case fell within the purview of the cause and prejudice standard "as interpreted by the Eleventh Circuit subsequent to *Sykes*." [15] In regard to Dorman's federal habeas petition No. 79–528 the court reasoned that the issue presented there involved a different aspect of Dorman's dismissal of his direct appeal and the decision in that proceeding was not controlling on the question of deliberate bypass or procedural default.[16] Finally, the court rejected the state's allegation that Dorman had waived his *Faretta* right by failing to continue to object to the appointment of Timmerman. Citing *Brown v. Wainwright*, 665 F.2d 607 (5th Cir., Unit B 1982) (en banc), the court noted that while it was possible for a petitioner to waive his *Faretta* right, neither was it necessary for Dorman to continually renew his request to proceed pro se after it had been conclusively denied.

The state filed a notice of appeal from the district court's judgment and the case was sent up for appellate review. Finding that the state denied Dorman his constitutional right to proceed pro se, that he did not waive this right, that the district court had the power to address the deprivation of this right, and that this claim is not barred by any considerations of federalism, comity, or the negligence or misbehavior of the petitioner, we affirm the judgment of the district court.

## DISCUSSION

In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the United States Supreme Court held that a criminal defendant in this country has a constitutional right to be his own lawyer; a Sixth Amendment right which, while difficult to discern from the text of the Constitution, is probably in harmony with the cultural character of the American people. *See McKaskle v. Wiggins*, 465 U.S. 168, 176–77, 104 S.Ct. 944, 950–51, 79 L.Ed.2d 122 (1984) ("[t]he right to appeal pro se exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense"). But unlike other constitutional rights, the right to be one's own counsel can easily be overlooked or waived if a defendant does not properly invoke the right or inadvertently

---

**15.** Citing *Ford v. Strickland*, 696 F.2d 804 (11th Cir.), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983) and *Huffman v. Wainwright*, 651 F.2d 347 (5th Cir.), *reh. en banc denied*, 657 F.2d 1251 (1981).

**16.** In habeas petition No. 79–528, the only issue Dorman raised was the denial by the state of his right to a direct appeal. As mentioned above, Dorman had dismissed his direct appeal in an attempt to expedite review of his conviction via an alternative proceeding (a Rule 3.850 motion). Dorman was apparently under the impression that since the direct appeal was dismissed without prejudice, he would be able to reinstate it if his Rule 3.850 motion was denied. When the trial court denied relief on the Rule 3.850 motion, Dorman appealed to the state court of appeals. He also filed habeas action No. 79–528.

The magistrate's report and recommendation in that cause, which the district court adopted in its entirety, reviewed the constitutional obligations of a state to make direct appellate review available to petitioners, including the provision of a trial transcript or some reasonable alternative, if necessary, to assure meaningful appellate review. The magistrate concluded that even though Dorman, as an indigent, had a right to a free transcript, "the lack of a transcript becomes harmless when viewed in the light of petitioner [Dorman] moving for and securing a dismissal of his appeal." *See* 1 Record, doc. 55, Exh. "B" at p. 2. The magistrate reasoned that Dorman had failed to prosecute his appeal because he wanted instead to proceed with a Rule 3.850 motion in the trial court and not because "he was unable to prosecute the appeal due to lack of his trial transcript". *Id.* Consequently, Dorman's failure to secure an appeal was "attributable solely to his own action in dismissing his appeal." *Id.* The state does not challenge the district court's disposition of this argument and the question is not before us on appeal.

waives it through some procedural misstep. Consequently, even though there is no question that the right to proceed pro se exists, difficult issues arise in determining the scope of that right vis-a-vis the legitimate interests of both the state and federal judicial systems in the administration of justice. *See Faretta,* 422 U.S. at 852, 95 S.Ct. at 2549 (Blackmun, J., dissenting).

This appeal presents several issues regarding the petitioner's invocation and retention of his *Faretta* right as well as issues regarding the power of the federal courts to reach alleged violations of constitutional rights that were inadequately or erroneously disposed of in the state court. Specifically, we must determine, first, whether the district court erred in finding that Dorman properly invoked his right to proceed pro se and, second, that he did not waive this right by acquiescing to the appointment of private counsel (Timmerman). Third, we must decide whether the court erred in finding that Dorman did not deliberately bypass an opportunity for review of an alleged constitutional deprivation or, fourth, commit some other procedural default that should have precluded the federal district court from reaching the alleged constitutional claim.

*Invocation of the Right to Proceed Pro Se*

The state contends that the district court erred in finding that Dorman adequately invoked his right to self-representation. It argues that there is no finding that Dorman made a "knowing and intelligent" waiver of his right to counsel or that he was made aware of the dangers and disadvantages of self-representation. *See Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541.

This is a specious argument. Under the facts here, the trial court never bothered to inquire whether Dorman was making a knowing and intelligent waiver of his right to counsel or was aware of the dangers and disadvantages of self-representation. The

constant summary denial of his requests prevent us from even reaching this step of the analysis. In *Faretta,* the Court noted that the petitioner had "clearly and unequivocally declared to the trial judge" his desire to proceed pro se. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541. In *Brown v. Wainwright,* the "old Fifth" [17] provided guidelines for determining when the mutually exclusive right to counsel and the right to self-representation were in operation. 665 F.2d at 610–12. *Brown* held that the right to counsel was preeminent over the right to self-representation in the sense that the former attached automatically and had to be affirmatively waived to be lost whereas the latter did not attach unless and until it was *asserted. Brown,* 665 F.2d at 610 (emphasis is original).[18]

The magistrate in this cause reasoned that Dorman never properly invoked his right to self-representation because he never explicitly waived his right to counsel and never expressed that *he* wanted to represent himself. The district court correctly rejected this reasoning. To invoke his Sixth Amendment right under *Faretta* a defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to his request. Insofar as the desire to proceed pro se is concerned, petitioner must do no more than state his request, either orally or in writing, unambiguously to the court so that no reasonable person can say that the request was not made. In this Circuit, the court must then conduct a hearing on the waiver of the right to counsel to determine whether the accused understands the risks of proceeding pro se. *United States v. Chaney,* 662 F.2d 1148, 1152 (5th Cir., Unit B 1981). This hearing never occurred and these findings were never made.

No reasonable person could deny that Dorman wanted to conduct his own defense. Not only did he cite *Faretta* in

---

17. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981).

18. We note, however, that *Brown* did not require a state trial court to conduct a waiver

hearing of a petitioner's *Faretta* right after it had been asserted as is required when waiver of right to counsel is at issue. 665 F.2d at 612.

several written requests to the trial judge but he began civil proceedings against the Public Defender hoping to create a conflict of interest that would force the trial judge to discharge appointed counsel and allow Dorman to defend himself. *See* 2 Record at p. 16. The district court did not err in finding that Dorman clearly invoked his desire to proceed pro se. And although he never had a formal opportunity to show that he had the requisite knowledge and intelligence to waive his right to counsel, the record more than adequately reflects Dorman's awareness of the significant constitutional right that he wanted to give up.

*Waiver*

The state argues next that even if Dorman properly invoked his right to represent himself he subsequently waived that right by acquiescing to the appointment of Timmerman. Dorman's wish, claims the state, was not to proceed pro se, but to avoid having his case handled by the Public Defender. Although he was financially unable to retain his own attorney, Dorman was willing to accept representation by private counsel appointed by the court. Having done so, Dorman waived or abandoned his desire to proceed pro se.

■ We acknowledge the viability of this argument. Under the law of this Circuit, it is much easier to waive one's right to self-representation than to waive other constitutional rights, such as the right to counsel. In *Brown*, we held that "[a] waiver may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." 665 F.2d at 611. Moreover, a court has no duty to conduct a hearing or otherwise confront the defendant about his desire to proceed

pro se even if by conduct subsequent to the invocation of his right the defendant appears to be vacillating on his decision. *Id.* at 612.

■ The record contained two or three hints of Dorman's dissatisfaction with attorneys from the public defender office.[19] Other than these faint inferences detectible in the record, however, Dorman's wish to proceed pro se rings out loud and clear. It is true, as the state points out, that from the time Timmerman was appointed until after the trial, Dorman stopped filing letters and requests to proceed pro se. But there is evidence that Dorman was on the verge of being in contempt of court by his repeated letters and motions to the court[20] and it would be a weak right indeed if a defendant had to risk sanctions by the court to keep a constitutional right. Again, in *Brown* we stated that "[a]fter a clear denial of the request, a defendant need not make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal." 665 F.2d at 612.

The district court, contrary to the report of its magistrate, reviewed the evidence in support of a finding of waiver and rejected it. We can not say that the court was either factually or legally incorrect on this point and leave its ruling undisturbed.

*Procedural Default: Based on Concepts of Waiver and Abstention*

The last two issues in this appeal involve two doctrines that limit the discretion of a federal court in reviewing alleged constitutional deprivations in state criminal proceedings. One, the notion of "deliberate bypass", is identified with *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

**19.** After bombarding the state court judge with letters requesting that the public defender (Rogers) be withdrawn, Judge Coe appointed Wayne S. Timmerman as counsel for defendant. In the "Order Appointing Counsel", signed by Judge Coe III, the caption reads "THIS COURT has granted the Motion for Appointment of *Private Counsel* ..." 1 Record, doc. 37, Exh. "D" (emphasis added). Moreover, Dorman discharged the public defenders appointed to represent him in both state and federal court. He allegedly discharged the public defender (Chalu) appointed to handle the direct appeal of his conviction as well as the federal public defender appointed to handle his habeas corpus causes. The magistrate eventually appointed private counsel for Dorman to handle the lower court proceedings as well as this appeal. *See* 1 Record, docs. 19–24.

**20.** *See supra* text accompanying note 7.

The other, the "cause and prejudice" exception, is identified with *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). It would be incorrect to say that these doctrines were created by *Fay* and *Sykes*, respectively, because their roots can be traced through a previous line of jurisprudence. *See Sykes, supra; Fay, supra.*

In spite of these limiting doctrines there is no question that a federal court has the power to grant a state habeas petitioner relief if alleged constitutional deprivations are made out. *Fay*, 372 U.S. at 425–27, 83 S.Ct. at 841–43. Habeas corpus relief being founded in equity, the final judgment of a state court on federal claims is not res judicata and only considerations of comity and federal-state relations compel us to decline relief, if appropriate. *Sykes*, 433 U.S. at 80, 97 S.Ct. at 2502.

The state argues, first, that the district court should have dismissed Dorman's habeas corpus petition because he "deliberately bypassed" a state procedure for relief, that is, direct appellate review, when he dismissed his appeal in May 1979. Second, the state contends that the court erred in finding that "cause and prejudice" existed to allow relief despite Dorman's procedural default of dismissing his direct appeal.

*Deliberate Bypass*

The so called deliberate bypass rule is a type waiver doctrine that precludes federal review of even meritorious constitutional claims. *Fay*, 372 U.S. at 439, 83 S.Ct. at 849; *Montgomery v. Hopper*, 488 F.2d 877, 879 (5th Cir.1973). Because of the harshness of this result, *Fay* held that in asserting that a petitioner had deliberately bypassed a state remedy the state had the burden of showing that a petitioner's procedural default was an "intentional relinquishment or abandonment of a known right or privilege" 372 U.S. at 439, 83 S.Ct. at 849 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). In this Circuit we have construed the deliberate bypass rule in favor of habeas corpus petitioners, requiring in most cases an evidentiary hearing to show the intentional relinquishment of a right and the benefit of a tactical advantage by such relinquishment. *Buckelew v. United States*, 575 F.2d 515, 519 (5th Cir.1978).

The state contends that "the indiscriminate use of the *Johnson v. Zerbst* formulation to determine deliberate bypass has not survived the test of time and that the Supreme Court in *Schneckloth v. Bustamante*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) "teaches that this test is only to be apply (sic) to those rights that protect a fair trial." We disagree with the state's application of *Schneckloth*. That case involved the waiver of petitioner's Fourth Amendment rights by consenting to the search of his car. The issue presented was whether the petitioner's ignorance of his Fourth Amendment rights invalidated the "voluntariness" of his consent. The Court held that the voluntariness of a consent search was a question of fact to be determined from the totality of all the circumstances and that knowledge of the right to refuse consent constituted only one factor to be considered in making such an assessment. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047.

*Schneckloth* also addressed the argument that a consent is a "waiver" of a person's constitutional rights and that under the doctrine of *Johnson v. Zerbst*, the state had to demonstrate the petitioner's intentional relinquishment of a known right or privilege. 412 U.S. at 235, 93 S.Ct. at 2051. But the Court refused to incorporate the *Johnson* formulation of waiver into the area of Fourth Amendment searches and seizures reasoning that it was meant to safeguard only those constitutional guarantees necessary to preserve a fair trial. 412 U.S. at 236–37, 93 S.Ct. at 2052–53.

Relying on this language, the state argues that only an appeal is at issue here, not Dorman's right to a fair trial. Therefore, the "knowing and intelligent relinquishment of a known right or privilege" test of *Johnson*, is not applicable here. The state contends that since no fundamental constitutional right (to a fair trial) is at

issue here and since, acting as his own counsel, Dorman deliberately dismissed his direct appeal, he should be held responsible for the consequences of his actions.

Were it not for the state's own misfeasance in the preparation of Dorman's trial transcript we would find this argument more compelling. The state essentially urges us to exercise a wooden application of the deliberate bypass rule. But this case does not lend itself to the tidy application of judicial catchphrases. To do justice, we must look beyond the literal meaning of the phrases which lawyers and judges alike use to encapsulate complex concepts.

■ In regard to the deliberate bypass doctrine, the issue is not whether Dorman's decision to dismiss his direct appeal was deliberate (of course it was), it is whether Dorman was trying to either sandbag the court or engage in other conduct that should disentitle him from receiving the relief that he seeks. *See Fay*, 372 U.S. at 438, 83 S.Ct. at 848. Another factor we must consider is whether the integrity of the state's administration of justice is in any way compromised by allowing Dorman to raise his claims in a federal forum. *See id.* at 433–39, 83 S.Ct. at 845–49. Finally, we must consider the importance of the constitutional right at issue in regard to the fairness of the trial. *See Schneckloth*, 412 U.S. at 236–37, 93 S.Ct. at 2052–53.

■ Analyzed in this manner we cannot say that Dorman's dismissal of his direct appeal constitutes the type of conduct that should disentitle him from relief. The record reflects that he had to request several extensions of the appellate timetable to keep the appeal alive and that only the state's failure to timely provide Dorman with a trial transcript prevented him from following up the appeal. He cannot be faulted for seeking alternative relief after such an unreasonable delay in the preparation of his trial transcript.

The record also reveals that the state's interest in the administration of its criminal justice system free of undue federal interference has not been compromised. Dorman presented the state with ample opportunities to address his constitutional claims, especially that of the right to self-representation. Having failed to even address the question, that state cannot now complain about the federal court's exercise of its power over the state in vindicating constitutional guarantees. Finally, although we may question whether the right to proceed pro se is fundamental to the fairness of a trial, our refusal to recognize it under the facts presented in this case would completely repudiate the viability of the right. Moreover, it would reward the state for its sluggishness in providing indigent petitioners the means for state appellate review of alleged constitutional infirmities in their convictions.

### The "Cause & Prejudice" Doctrine

■ The state argues that the district court erred in finding that there was "cause and prejudice" as articulated in *Wainwright v. Sykes*, sufficient to excuse Dorman from the procedural default he committed (dismissing his direct appeal) and that the district court wrongfully used this doctrine as a means of circumventing the deliberate bypass standard of *Fay v. Noia*. We disagree. Although he committed a procedural default when he dismissed his direct appeal, the district court correctly found that Dorman met his burden of showing cause and prejudice for the default. Consequently, the court did not err in reaching the merits of the alleged constitutional violation or in finding in favor of Dorman on the allegation.

On its face, *Wainwright v. Sykes* appears to rest on the well-known but elusive doctrine of independent and adequate state grounds.[21] At first blush, the underlying premise of *Sykes* seems to be that a habeas petitioner should not be able to raise in a collateral proceeding (*i.e.*, habeas corpus)

---

**21.** For a thorough, albeit dated, discussion of this doctrine see the annotation at 24 L.Ed.2d 837 (1970).

federal issues that could not have been raised on direct review under the doctrine of independent and adequate state grounds. A more thorough analysis, however, reveals that this doctrine rests on jurisdictional concepts pertinent to direct appellate review that are inapposite with the unquestioned power of federal courts in the area of habeas corpus. *See Fay v. Noia*, 372 U.S. at 428–30, 83 S.Ct. at 843–44 ("[t]he jurisdictional prerequisite [for federal habeas corpus] is not the judgment of a state court but detention simpliciter"). The independent and adequate state grounds rule "is a consequence of the Court's obligation to refrain from rendering advisory opinions or passing upon moot questions." *Id.* at 429–30, 83 S.Ct. at 844; *see also* 2 Fed.Pro. §§ 3:93–3:94 (Law.Ed.1981). Contrariwise, the Supreme Court has consistently reiterated that in habeas corpus proceedings federal courts possess the power to reach the merits of federal claims. *See generally Murray v. Carrier*, — U.S. —, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes, supra; Fay v. Noia, supra.*

Principles of comity and federalism then, rather than notions of power and jurisdiction, govern a federal court's discretion in refusing to hear petitions otherwise cognizable in federal court. As such, the type of procedural default in *Wainwright v. Sykes* involves a type of abstention. *See Murray v. Carrier*, — U.S. at —, 106 S.Ct. at 2678–79 (Brennan, J., dissenting).[22]

In the recent decision of *Murray v. Carrier, supra* the Supreme Court gave us further guidance on the doctrine of procedural default under *Sykes* and the proper application of the cause and prejudice standard. *Carrier* held that the cause and prejudice doctrine applies to all procedural defaults regardless of what stage of the proceeding, trial or appellate, the default at issue occurs. *Carrier*, — U.S. at —, 106 S.Ct. at 2646–47. We have already acknowledged that a procedural default occurred here.

*Carrier* further provides that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." — U.S. at —, 106 S.Ct. at 2646. That requirement has certainly been met here. The state unabashedly argues that Dorman should not have dismissed his direct appeal and that he should now live with the consequences of his actions. We cannot agree. The state's failure to provide Dorman with a trial transcript within a reasonable time to perfect his appeal constitutes an external factor out of Dorman's control that suffices as "cause" for the dismissal of the direct appeal.

Finally, given the nature of the constitutional right at issue here, we are compelled to find inherent prejudice in the denial of the right. The Supreme Court has held that the denial of the right to proceed pro se is not amenable to harmless error analysis. *McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 951 n. 8, 79 L.Ed.2d 122 (1984) ("The right [to proceed pro se] is either respected or denied; its deprivation cannot be harmless."). If the deprivation of this right cannot be harmless it must, by definition, be prejudicial. In this case Dorman's constitutional right to proceed pro se was unquestionably denied. Therefore, regardless of the fairness of the trial at which he was convicted, he was prejudiced. The district court did not err in so finding and, accordingly, we AFFIRM.

---

**22.** Put another way, the cause and prejudice doctrine focuses on procedural missteps by a petitioner (or his counsel) that, pursuant to principles of comity and federalism, should compel the district court to refrain from the exercise of its jurisdiction, absent an exculpatory reason for the misstep and a showing of prejudice flowing from the error, whether committed intentionally, inadvertently, or negligent-

ly. On the other hand, the deliberate bypass doctrine focuses on conduct of a petitioner (or his counsel) that lends itself to a waiver analysis. *See Fay v. Noia*, 372 U.S. at 438, 83 S.Ct. at 848. This distinction may provide a starting point for placing these two doctrines in perspective, even though their application to specific facts more often than not results in imperfect fits.