**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-7462

ROBERT HOLLAND KOON,

              Petitioner - Appellant,

        v.

COLIE RUSHTON, Warden of McCormick Correctional Institution;
HENRY DARGAN MCMASTER, Attorney General of the State of
South Carolina,

              Respondents - Appellees.

Appeal from the United States District Court for the District of
South Carolina, at Anderson.  R. Bryan Harwell, District Judge.
(8:05-cv-02523-RBH)

Argued:  December 4, 2009          Decided:  February 5, 2010

Before TRAXLER, Chief Judge, and AGEE and DAVIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Richard Donald Dietz, KILPATRICK STOCKTON, LLP, Winston-
Salem, North Carolina, for Appellant.  William Edgar Salter,
III, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia,
South Carolina, for Appellees.  **ON BRIEF:** Adam H. Charnes,
Dustin T. Greene, KILPATRICK STOCKTON, LLP, Winston-Salem, North
Carolina, for Appellant.  Henry Dargan McMaster, Attorney
General, Donald J. Zelenka, Assistant Deputy Attorney General,
OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia,
South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert Holland Koon ("Koon") appeals the judgment of the United States District Court for the District of South Carolina, which dismissed his petition for a Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 2253(c), this Court granted a certificate of appealability as to three issues. For the following reasons, we affirm the judgment of the district court.

I.

A. State Proceedings

In January 1997, the offices of the Cherokee County, South Carolina Department of Probation, Pardon, and Parole Services ("probation office") were burglarized. Several offices were ransacked and a number of items were stolen, including money, a cellular telephone, badges, two sets of handcuffs, a two-way radio, and a .357 revolver.

Several days later, police received a call reporting that a man armed with a gun was beating on the door of the residence of Jerry Sutherland ("Sutherland"). When the officers arrived, Sutherland pointed to the back of the home and told them "he's back in the bedroom." J.A. 97. Upon entering the bedroom, officers found Koon hiding under the bed. After his arrest, officers searched the area and found a .357 revolver located

3

under the same side of the bed where Koon had been found. The revolver was the gun stolen from the probation office and Koon was then charged with grand larceny and second degree burglary.

At his arraignment, Koon requested an attorney. However, before an attorney was provided, officers questioned Koon about the burglary and Koon led them to the location of other items stolen from the probation office, including badges, telephones, and the two-way radio. During trial, the court granted a motion to suppress that evidence (hereinafter "suppressed evidence"), holding that the "state has failed to . . . prove" that "the defendant was [not] denied right to counsel." J.A. 90.

During preparation for trial, Koon communicated with the trial court on several occasions. On April 3, 1998, Koon sent a letter to the court, stating that he was "informing the court I am asserting my rights under Faretta v. California to represent my-self, to insure [sic] that matters raised in this letter and other matters are raised at my trial." J.A. 65. The trial court forwarded the letter to Koon's counsel, with the following instructions: "If there needs to be a hearing with Mr. Koon or you just need to speak with Judge Hayes about this letter, please don't hesitate to call our office." J.A. 74.

Koon wrote several more letters to the trial court requesting that the court issue subpoenas, but contradicting his initial correspondence stating that he "may" represent himself,

4

J.A. 70, 71, noting his "possible (pro se) representation," J.A. 71, and signing the letters as a "Pro Se Defendant." J.A. 70, 71, 76. In these letters, Koon also made several references to "my attorney," Mitch Slade ("Slade"), informing the court that Slade "may supeano [sic] additional witnesses," J.A. 73, that the court send a copy of its response to Koon and to his attorney, and directing the court to contact "my atty. Mitch Slade." J.A. 76. The court returned these letters to Koon, directing him "to make this request to your attorney." J.A. 70.

During trial, the State called Sutherland as a witness. Sutherland testified that Koon came to his house on the day of his arrest and showed him the stolen gun. Sutherland testified that Koon left after showing him the gun and returned later "beating on the door." J.A. 172. At that point, Sutherland's step-son and/or his wife became frightened and called the police. Sutherland testified that as officers arrived, Koon ran into the woods. Sutherland and his wife later found Koon in a back area of the home, at which point the officers returned and found Koon.

During cross-examination, defense counsel questioned Sutherland concerning his version of events, his relationship with Koon, and his drinking habits. Sutherland testified that he and Koon were friends and that he drinks everyday. Defense counsel did not question Sutherland about or impeach his

5

credibility as to his two previous convictions of providing false information to a law enforcement officer.

Regarding this decision, defense counsel later testified at the state post-conviction hearing ("PCR hearing") that "[w]hen we first started working on this case, Mr. Koon thought that Mr. Sutherland was gonna [sic] offer some testimony that would of [sic] been helpful to him. I mean they were, they had been friends for a long time. And he thought that he would be a . . . more favorable witness." J.A. 333. However, by the time the trial arrived, Sutherland was "no longer allied with the defendant," J.A. 333, and counsel testified that "I think our position, mine and Mr. Koon's position . . . was that [Sutherland] was just too drunk to remember what was going on." J.A. 334. Although he could not "recall specifically" why he did not use Sutherland's past convictions, J.A. 335, he maintained that the defense's goal was to show "that [Sutherland and Koon] were friends and that he was a, a drunk or that he was drunk . . . a lot of times when these events were going on." J.A. 336.

The defense called two witnesses at trial, who testified that Koon was with them the evening of the burglary. Koon also testified in his own defense and explained the presence of his fingerprints on a ledger card in the probation office by testifying that he looked at the card in the presence of

6

probation officers during a fee dispute prior to the burglary. Koon explained his connection with the stolen gun by testifying that a man named Charles Blackwell ("Blackwell") had earlier shown him the gun, Koon then drove Blackwell to Sutherland's home for the purpose of selling the gun, and that Sutherland purchased the gun from Blackwell. On the day of his arrest, Koon testified that he had been drinking with Sutherland, that everything was "like a blur," J.A. 227, and that he could not remember why he was under the bed next to the stolen gun.

During cross-examination the State questioned Koon about the suppressed evidence, asking whether he had ever seen the stolen items and what he did with them. Defense counsel objected to the line of questioning; however, the trial court allowed the State to continue, finding that Koon had waived his rights by taking the stand. Ultimately, Koon testified either that he was not sure whether he had seen some of the items, or denied seeing the suppressed evidence other than while in police custody. The State never impeached Koon on the veracity of these statements, nor did the State contradict Koon's testimony.

Koon was convicted of burglary and grand larceny. He was sentenced to life without parole for second degree burglary and five years, consecutive, for grand larceny.

Koon appealed the trial court's decision to the South Carolina Court of Appeals, which affirmed the conviction. Koon

then filed a post-conviction relief ("PCR") application with the South Carolina Court of Common Pleas ("PCR court"), alleging multiple errors and attesting that "he is being held in custody unlawfully due to the ineffective assistance of counsel." J.A. 351. The PCR court conducted a hearing and found that Koon "failed to carry his burden of proof to show that his trial counsel's representation fell below reasonable professional norms or that he was prejudiced by the alleged deficient representation." J.A. 367.

Koon then petitioned for Writ of Certiorari to the Supreme Court of South Carolina, which was denied on its merits. Koon's motion for reconsideration/rehearing en banc was denied.

B. Habeas Proceedings

In 2005, Koon filed a habeas petition in the district court. The petition listed numerous issues, including those raised here, as well as various other claims of trial error and ineffective assistance of counsel. In response, the State filed a motion for summary judgment and Koon filed a response in opposition.

The magistrate judge recommended granting summary judgment to the State and dismissing all claims except Claim 7: "whether [the state] court's summary conclusion that [Koon] was not prejudiced by the failure to impeach Sutherland was an

8

unreasonable application of Strickland." J.A. 505. The magistrate judge found that defense counsel's failure to impeach Sutherland on his prior convictions fell below the applicable reasonableness standard and that the error prejudiced Koon. Thus, the magistrate judge found that "genuine issues of fact remain as to whether the PCR court's summary conclusion that the petitioner was not prejudiced by the failure to impeach Sutherland was an unreasonable application of Strickland." J.A. 505.

After the parties filed timely objections to the magistrate's report, the district court adopted the report and recommendation, except as to Claim 7. As to that issue, the district court found that Koon "has not shown that his attorney was ineffective under Strickland regarding the cross-examination of Sutherland and there was not an unreasonable application of federal law by the state court." J.A. 564. In accordance with these findings, the district court granted summary judgment to the State on all issues and denied Koon's habeas petition.

Koon timely appealed the district court's order denying his habeas petition. This Court has appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2254 and granted a certificate of appealability as to three issues: (1) whether Koon's right to self-representation was violated; (2) whether Koon's counsel was ineffective for failing to impeach Sutherland; and (3) whether

9

Koon was improperly questioned about the suppressed evidence during cross-examination.

## II.

The decision of a district court on a matter of habeas corpus relief is reviewed de novo and under the standards set forth in 28 U.S.C. § 2254. Bell v. Ozmint, 332 F.3d 229, 233 (4th Cir. 2003). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), if the issue on appeal was adjudicated in state court, as it was here, this Court

> may award habeas corpus relief . . . only if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Cummings v. Polk, 475 F.3d 230, 237 (4th Cir. 2007) (quoting 28 U.S.C. § 2254(d)).

In Bell v. Cone, the Supreme Court held that a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law

10

"if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." Id. However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

## III.

### A. Right to Self-Representation

Koon argues that that he made repeated requests to proceed pro se to the trial court and that he never waived his right to represent himself. Koon contends that the trial court violated his Sixth Amendment rights by either ignoring or denying his requests and by failing to conduct a hearing on the issue, which he argues was required under Faretta v. California, 422 U.S. 806 (1975). Koon claims that, because a violation of the Sixth Amendment is a structural error, it requires automatic reversal of his convictions.

The PCR court considered this claim in the context of whether Koon's counsel was ineffective for failing to request a Faretta hearing and held that Koon's "testimony concerning his desire to proceed pro se was not credible. [He] admitted at trial that Mr. Slade represented him well." J.A. 353. The Supreme Court of South Carolina considered the same issue, as

11

well as whether the trial court violated Koon's rights by failing to conduct a Faretta inquiry sua sponte. The Supreme Court of South Carolina noted that Koon's "request to proceed pro se was considered by this Court in its review of the petition for a writ of certiorari, both in the context of ineffective assistance of counsel and trial court error," J.A. 465, and found that both arguments lacked merit.

In Faretta, the Supreme Court held that "a State may [not] hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." 422 U.S. at 807. This is because, "implicit . . . in the Sixth Amendment's guarantee of a right to the assistance of counsel, is 'the right of the accused personally to manage and conduct his own defense in a criminal case.'" Id. at 817 (quoting United States v. Plattner, 330 F.2d 271, 274 (2d Cir. 1964)). Thus, "[u]nless the accused has acquiesced in . . . representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense." Id. at 821. Accordingly, a defendant's choice to proceed pro se "must be honored out of 'that respect for the individual which is the lifeblood of the law.'" Id. at 834 (quoting Illinois v. Allen, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring)).

12

The Faretta Court also cautioned that, because "[w]hen an accused manages his own defense, he relinquishes . . . many of the traditional benefits associated with the right to counsel . . .[,] in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits."[1] Id. at 835. Thus, the right attaches when a defendant "clearly and unequivocally declare[s] to the trial judge that [the defendant] want[s] to represent himself and d[oes] not want counsel." Id. at 835.

Although Faretta recognized the importance of the right to self-representation, "courts have assumed that the right to self-representation and the right to representation by counsel, while independent, are essentially inverse aspects of the Sixth Amendment and thus that assertion of one constitutes a de facto waiver of the other." United States v. Singleton, 107 F.3d 1091, 1096 (4th Cir. 1997). Thus, "[a] trial court evaluating a defendant's request to represent himself must 'traverse . . . a

---

[1] Contrary to Koon's assertions, Faretta does not require a formal hearing. Instead, Faretta requires that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Faretta, 422 U.S. at 835 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)). The Faretta Court "did not lay down detailed guidelines concerning what tests or lines of inquiry a trial judge is required to conduct to determine whether the defendant's decision was 'knowing and intelligent.'" United States v. Gallop, 838 F.2d 105, 109 (4th Cir. 1988).

13

thin line' between improperly allowing the defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." Fields v. Murray, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc). Ultimately though, "[o]f the two rights, . . . the right to counsel is preeminent and hence, the default position." Singleton, 107 F.3d at 1096; Tuitt v. Fair, 822 F.2d 166, 174 (1st Cir. 1987) ("Where the two rights are in collision, the nature of the two rights makes it reasonable to favor the right to counsel . . . .").

Thus, it follows that "[a] defendant can waive his Faretta rights," McKaskle v. Wiggins, 465 U.S. 168, 182 (1984), and those rights may be more easily waived than the right to counsel. See Singleton, 107 F.3d at 1096; Williams v. Bartlett, 44 F.3d 95, 100 (2d Cir. 1994) ("Once asserted, . . . the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether."); Dorman v. Wainwright, 798 F.2d 1358, 1365-66 (11th Cir. 1986) ("[U]nlike other constitutional rights, the right to be one's own counsel can easily be overlooked or waived if a defendant does not properly invoke the right or inadvertently waives it through some procedural misstep."); Brown v. Wainwright, 665 F.2d 607, 611 (5th Cir. 1982) ("A waiver may be found if it reasonably appears to the court that

14

defendant has abandoned his initial request to represent himself.").

We find that Koon waived his right to self-representation and thus the PCR court and the Supreme Court of South Carolina did not decide contrary to, or unreasonably apply, Faretta and McKaskle.[2]  After his initial assertion of his Faretta rights, Koon displayed equivocating, contradicting, and vacillating behavior.  He stated in a letter to the trial court that he "may" represent himself, J.A. 70, 71, and noted his "possible (pro se) representation." J.A. 71 (emphasis added).  Koon also never stated while in front of the trial court that he wished to proceed pro se, although he had multiple opportunities to do so.

Furthermore, in Koon's letters to the court, he made several references to "my attorney," informing the court that Slade "may supeano [sic] additional witnesses," J.A. 73, that the court send a copy of its response to himself and to his attorney, and directing the court to contact "my atty. Mitch Slade." J.A. 76 (emphasis added).  Clearly, Koon invited and accepted the participation of Slade in his defense, and "[a]

---

[2] Neither court cited Faretta or McKaskle.  However, "to avoid [the] pitfall of rendering decision[s] 'contrary to' federal law, [the] state court need not cite or even be aware of relevant Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Barbe v. McBride, 521 F.3d 443, 456 n. 19 (4th Cir. 2008) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

15

defendant's invitation to counsel to participate in the trial obliterates any claim that the participation in question deprived the defendant of control over his own defense." McKaskle, 465 U.S. at 182. Thus, Koon's "pro se efforts were undermined primarily by his own, frequent changes of mind regarding counsel's role." Id.

Consequently, the PCR court's and the Supreme Court of South Carolina's decisions were not contrary to, or an unreasonable applicable of, Supreme Court precedent under Faretta or McKaskle.


### B. Ineffective Assistance of Counsel Claim

Koon argues that defense counsel's failure to impeach Sutherland with evidence that he had twice been convicted of giving false statements to the police was deficient performance under Strickland v. Washington, 466 U.S. 668 (1984), which worked to his prejudice. Koon contends that "there is no evidence that trial counsel's decision not to impeach Mr. Sutherland was part of any trial strategy," Appellant's Br. 25, and Sutherland's testimony was "central to the prosecution's case." Appellee's Br. 24 (quotation omitted).

The PCR court considered the issue and held that "[t]rial counsel testified at the PCR evidentiary hearing that the most beneficial information that he got out on cross examination of

16

Southerland [sic] was that he was a chronic drunk and that his memory was not reliable. Trial counsel's testimony concerning his strategy with regard to Southerland [sic] was credible." J.A. 362. The court, citing Strickland, found that "the Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard." Id. Furthermore, the court held that "the Applicant also failed to carry his burden of proof to show a reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged deficient representation." Id.

A petitioner asserting a claim for ineffective assistance of counsel must satisfy two prongs. First, the petitioner "must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. Counsel's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Specifically, the petitioner must show that counsel's performance falls "below an objective standard of reasonableness," measured "under prevailing professional norms." Id. at 688. The defendant must also "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations omitted). Ultimately, "[j]udicial scrutiny of

17

counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

Strickland's second prong directs that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Thus, "the defendant must show that the deficient performance prejudiced the defense." Id. at 687. However, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The PCR court's conclusion that Koon failed to carry his burden of showing that his counsel was ineffective was not contrary to or an unreasonable application of Strickland. The defense had the articulable strategy of showing that Sutherland was a chronic drunk and thus his recollection of events was unreliable. Pursuant to Strickland, it was not unreasonable for the PCR court to find that counsel's strategy was within "the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

18

Moreover, even if defense counsel's performance fell below the objective standard of reasonableness, Koon did not show that there was a reasonable probability that, but for the deficiency, the result of his trial would have been different. Although Sutherland's testimony was beneficial to the Government's case, it was not crucial. Koon had the gun in his constructive possession when he was arrested, and his fingerprints were found on a ledger card in the probation office. In addition, officers testified that an eyewitness reported that he saw a man armed with a gun pounding on Sutherland's door, which was presumably Koon. Consequently, it was not unreasonable for the PCR court to find that Koon did not carry his burden as to the second Strickland prong.

## C. Use of Suppressed Evidence

During cross-examination, the State questioned Koon about the suppressed evidence, asking him whether he had seen the stolen address book, walkie-talkies, or handcuffs. Koon responded that he had not, or could not remember whether he had. During questioning, defense counsel objected to the use of the suppressed evidence. The trial court found that the evidence was admissible for impeachment purposes, and found that Koon had "waived his right to remain silent. Once he takes the stand [the State is] entitled to ask him everything that he knows."

19

J.A. 283.  Koon raised the issue again on appeal, but the South Carolina Court of Appeals did not reach the issue of whether the trial court erred.  Instead, that court found that "any error in the trial judge's ruling is harmless" because "Koon was not prejudiced by the latitude afforded the State's cross-examination because nothing incriminating resulted from it." J.A. 302.

Koon argues that "[a]lthough a defendant may be impeached with excluded evidence if he testifies about that evidence during his direct testimony, the Government may not 'smuggle in' tainted evidence by raising it for the first time on cross-examination." Appellant's Br. 36-37.  Koon contends that this error was not harmless, because "this case turned on the credibility of the witnesses" and "the prosecution's use of the excluded evidence plainly damaged Mr. Koon's credibility to the jury." Appellant's Br. 41.

Assuming, but not deciding, that the trial court correctly applied South Carolina Rule of Evidence 611(b),[3] the South

---

[3] Rule 611(b) differs from the federal rule.  Consistent with the federal rule, the Supreme Court in United States v. Havens held that a "defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the government, albeit by evidence that has been illegally obtained and that is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." 446 U.S. 620, 627-28 (1980) (emphasis added).  However, the South (Continued)

20

Carolina Court of Appeals' decision was not unreasonable in any case when it found that error, if it existed, did not prejudice Koon. Counsel never contradicted Koon's assertions that he had only seen the evidence in photographs or not at all, nor did counsel point out that Koon had known the location of these items after the robbery. Koon never admitted in front of the jury that he possessed the items at any time or that he knew the location of the items, and the State did not contradict him. Koon only admitted that he had seen the probation officer's address book when he was in the office to report or in photographs after he was taken into custody, and that he could not remember whether he had seen the specific badges and handcuffs.

Furthermore, a "harmless-error standard applies in determining whether habeas relief must be granted because of constitutional error of the trial type." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993). The applicable test requires a showing that "the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

---

Carolina Rule directs that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." SCRE 611(b).

This Court has found that, "[i]n applying Brecht's harmless error analysis, we must grant a habeas petition if we are in 'grave doubt' as to the harmlessness of the error. ''Grave doubt' exists when, in light of the entire record, the matter is so evenly balanced that the court feels itself in 'virtual equipose' regarding the error's harmlessness.'" Richmond v. Polk, 375 F.3d 309, 335 (4th Cir. 2004) (quoting Fullwood v. Lee, 290 F.3d 663, 679 (4th Cir. 2002)) (internal citations omitted). For the reasons detailed above, we find that any error, if it exists, was harmless.

IV.

For the foregoing reasons, we conclude that the district court did not err in denying Koon's habeas petition. Accordingly, the judgment of the district court is

AFFIRMED.