Joseph Nelson **SPENCER**, Jr., **Petitioner,**

v.

**John AULT, Respondent.**

**No. C 95–4015–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Sept. 27, 1996.

B. John Burns, Des Moines, Iowa for Petitioner Joseph Nelson Spencer, Jr.

Assistant Iowa Attorney General Thomas D. McGrane, Iowa Attorney General's Office, Des Moines, Iowa, for Respondent John Ault.

## MEMORANDUM OPINION AND ORDER REGARDING PETITION FOR WRIT OF HABEAS CORPUS

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND .................................. 834
II. FINDINGS OF FACT ............................................... 836
III. CONCLUSIONS OF LAW ........................................... 839
 A. The Sixth Amendment Right To Self-Representation ...................... 839
 1. Nature of the right ......................................... 839
 2. Assertion and waiver ....................................... 840
 3. "Standby counsel" ......................................... 841
 4. Impact of denial of the right ................................. 841
 B. Spencer's Right To Self–Representation ............................... 842
 1. Invocation of the right to self-representation ...................... 842
 a. The record ........................................... 842
 b. Conclusions from the record ............................. 843
 i. The trial court's inquiry ............................ 843
 ii. Spencer's statements .............................. 845
 c. The state trial court's rationale .......................... 846
 2. Appointment of counsel ..................................... 847
 a. The record on appointment of counsel ...................... 848
 b. Conclusions from the record ............................. 849
 3. Waiver of the right to self-representation ....................... 850
IV. CONCLUSION ................................................... 853

Invoking the "Great Writ" of *habeas corpus*,[1] a prisoner in state custody asserts, pursuant to 28 U.S.C. § 2254, that he was denied his constitutional right to represent himself in his state court criminal proceedings. When confronted with a similar contention, the Fourth Circuit Court of Appeals observed, "A trial court evaluating a defendant's request to represent himself must 'traverse ... a thin line' between improperly allowing the defendant to proceed *pro se*, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation."[2] In determining whether the trial court in petitioner's case successfully traversed this "thin line," or instead strayed from it, this court finds it must decide three issues. The threshold issue is whether the petitioner clearly and unequivocally asserted his right to self-representation under the Sixth Amendment in his state court criminal proceedings. If the court finds that the petitioner did indeed make such a demand to represent himself, then the court must consider two further questions. They are, first, whether the state trial properly appointed only "standby counsel" to assist the petitioner with his defense, and, second, whether the petitioner then waived his right to self-representation by acquiescing in the actions of his standby counsel.

## I. INTRODUCTION AND BACKGROUND

Petitioner Joseph Nelson Spencer, Jr., an inmate at the North Central Correctional Facility (NCCF) in Rockwell City, Iowa, filed his petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on February 27, 1995,[3] challenging his conviction in state court nearly three years before on drug and weapons charges. The respondent is John Ault, the warden of NCCF. Spencer contends that he is in custody in violation of the

1. Chief Justice Marshall was the first to refer to the writ of *habeas corpus* as "the great writ" in *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 96, 2 L.Ed. 554 (1807). By the time Chief Justice Marshall so described it, the writ of *habeas corpus* had already enjoyed several centuries of recognition, dating back at least to the English common law of the thirteenth century. See, e.g., Clarke D. Forsythe, *The Historical Origins Of Broad Federal Habeas Review Reconsidered*, 70 NOTRE DAME L.REV. 1079, 1080 (1995) ("Unfortunately, the writ's arcane Latin phraseology obscures its historic purpose. A writ of *habeas corpus* is a civil procedure, directed to a law enforcement authority to contest 'the legality of the detention of one in the custody of another.' The writ is deeply based in the English common law, dating back at least to the thirteenth century") (citations omitted); Emanuel Margolis, *Habeas Corpus: The No-Longer Great Writ*, 98 DICK. L.REV. 557, 563 (1994) ("The writ of *habeas corpus* is traceable to the common law, well before the founding of this nation."). Several types of *habeas corpus* writs had developed at least by the end of the reign of Edward I in 1307, but an early reference to such a writ can be traced back to Henry II's Assize of Clarendon in 1166, which " 'made great changes in the administration of the criminal law' and, in part, ordered sheriffs to bring certain prisoners before the justices." *Id.* at 1090 (citing 1 SIR FREDERICK POLLOCK & FREDERICK MAITLAND, THE HISTORY OF ENGLISH LAW 137 (2d ed. 1968)). Although the writ of *habeas corpus* has a long history in the common law, and, in this country, the common law has been used to determine its scope, it was not until 1867 that Congress extended federal *habeas* jurisdiction to state prisoners by statutory enactment. *Id.* at 1087–88; Margolis, *The No-Longer Great Writ*, 98 DICK.L.REV. at 564. Although the American history of the Great Writ has been rich, in this court's experience, the grant of a writ of *habeas corpus* to a state prisoner is extraordinarily rare, as perhaps it should be if our dual system of state and federal courts is to function with proper respect for state criminal adjudications. Nonetheless, part of the respect due our criminal justice system cannot help but be the result of the power of courts to continue constitutional review of criminal convictions, even after direct appeals have run their course. See, e.g., 1 WILLIAM BLACKSTONE, COMMENTARIES 130–31 (1765) ("Of great importance to the public is the preservation of this personal liberty: for if once it were left in the power of any ... magistrate to imprison arbitrarily whomever he or his officers thought proper ... there would soon be an end of all other rights and immunities.").

2. *Fields v. Murray*, 49 F.3d 1024, 1029 (4th Cir. 1994) (quoting *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990)), *cert. denied*, —— U.S. ——, 116 S.Ct. 224, 133 L.Ed.2d 154 (1995).

3. Spencer filed an application to proceed *in formā pauperis* on February 13, 1995. His application was approved, and his petition for a writ of *habeas corpus* was therefore filed, on February 27, 1995.

United States Constitution, because he was denied his Sixth Amendment right to represent himself in his state court criminal proceedings.

On August 20, 1990, the State of Iowa filed four separate trial informations against Spencer in the Iowa District Court for Monona County, Iowa. Spencer was charged with one count of possession of marijuana with intent to manufacture in violation of Iowa Code § 204.401(1)(b), one count of possession of a schedule I controlled substance (marijuana) in violation of Iowa Code § 204.401(3), one count of possession of a schedule II controlled substance (cocaine) in violation of Iowa Code § 204.401(3), and one count of unauthorized possession of dangerous weapons in violation of Iowa Code § 724.3. The trial court granted the State's motion to join the four charges for a single trial, and the case proceeded to jury trial on May 12, 1992. On May 15, 1992, Spencer was convicted on all counts. On November 2, 1992, Spencer was sentenced to terms of imprisonment of up to five years for possession of marijuana with intent to manufacture, up to five years for possession of offensive weapons, one year for possession of cocaine, and six months for possession of marijuana. All sentences were to run concurrently.

Spencer timely appealed his conviction, *inter alia*, on the ground that the trial court erred in denying his request to proceed *pro se*. On January 25, 1994, the Iowa Court of Appeals affirmed Spencer's conviction in an unpublished 2-to-1 decision. *See State v. Spencer*, No. 92–1887 (Iowa Ct.App. Jan. 25, 1994). Upon further review, in a split 5-to-4 decision, the Iowa Supreme Court affirmed the decision of the Iowa Court of Appeals. *See State v. Spencer*, 519 N.W.2d 357 (Iowa), *cert. denied*, —— U.S. ——, 115 S.Ct. 642, 130 L.Ed.2d 548 (1994). Over the thoughtful and

vigorous dissent of Justice Lavorato, the Iowa Supreme Court held that Spencer did *not* make a clear and unequivocal request for self-representation, that "[t]he intent behind the appointment [of counsel] ... was to provide Spencer with 'standby counsel' as envisioned in *Faretta* and *McKaskle* [*v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ]," and that Spencer subsequently acquiesced in full representation by appointed counsel. *Id.* at 358–60.

Because of his unsuccessful appeal to the Iowa Supreme Court, Spencer had exhausted his state remedies as required by 28 U.S.C. § 2254 before filing the present action for *habeas corpus* relief. Spencer therefore filed his petition for a writ of *habeas corpus* with this court on February 27, 1996. Spencer seeks relief on just one ground: He contends that his Sixth Amendment rights were violated by the trial court's appointment of counsel over his request to represent himself. In his resistance to Spencer's petition, the respondent points out that the Iowa courts have made factual findings that Spencer did not make a clear and unequivocal request for self-representation, that the appointment of counsel was for the purpose of providing "standby counsel," and that Spencer subsequently acquiesced in full representation by appointed counsel. The respondent asserts that these factual findings are correct and that, based on these findings, Spencer's right to self-representation was not denied.[4]

On September 19, 1996, this court held oral argument on Spencer's petition for *habeas corpus* relief. Petitioner Joseph Nelson Spencer, Jr., was represented by B. John Burns, Des Moines, Iowa. Respondent John Ault was represented by Assistant Iowa Attorney General Thomas D. McGrane. This matter is now fully submitted.

---

**4.** The respondent makes sweeping claims that each of these determinations is a factual finding, and consequently must not only be presumed to be correct, but must be accorded great deference. However, the respondent cites only the most general of authorities in support of that proposition and no authorities specifically holding that each of these findings constitutes a finding of "basic, primary, or historical facts" to which this court must give deference. *See Thompson v. Keohane*, —— U.S. ——, ———— ——,

116 S.Ct. 457, 464–65, 133 L.Ed.2d 383 (1995) (reaffirming that " 'basic, primary, or historical facts' are the 'factual issue[s]' to which the statutory presumption of correctness dominantly relates," while mixed questions of law and fact generally are not subject to a presumption of correctness under § 2254(d); also cataloguing issues classified as "factual issues" that might extend beyond determinations of "what happened" and other issues that are "issues of law" for § 2254(d) purposes).

## II. FINDINGS OF FACT

State court findings of fact are presumed to be correct in federal *habeas corpus* proceedings unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).[5] Thus, to the extent this court finds that Spencer has not challenged the factual findings of the state courts, or has failed to rebut the presumption of the correctness of the state courts' findings, the following findings of fact are based on findings of the Iowa courts.

On July 18, 1990, Monona County Sheriff Dennis Smith went to Spencer's rural home to investigate complaints from neighbors that Spencer was discharging firearms on his property. While at Spencer's house, Sheriff Smith observed marijuana growing in Spencer's garden. After obtaining a search war-

---

5. President Clinton signed the "Antiterrorism and Effective Death Penalty Act of 1996" ("the Act"), Pub.L. No. 104–132, 110 Stat. 1214, into law on April 24, 1996. Pursuant to the Act, § 2254(e)(1) replaced § 2254(d). Section 2254(e)(1) now provides as follows:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Although the respondent's position at the hearing with respect to the effect and applicability of new § 2254(e)(1) was unclear, the respondent conceded at the hearing that new § 2254(e)(1) did not change the applicable law with respect to the deference owed to state court factual findings. Following the hearing, in correspondence dated September 20, 1996, counsel for the respondent indicated to the court that his representations to the court at the time of the hearing were in error, and that, in his view, the new amendments to § 2254 heightened the degree of deference owed to a state court's factual findings. The respondent cites an unpublished decision of the Tenth Circuit Court of Appeals, which states, "[T]he new amendments greatly heighten the degree of deference paid to a state court's findings of fact." *Jamerson v. Reynolds,* 89 F.3d 850, 1996 WL 364595 (10th Cir. 1996) (unpublished table decision). Nevertheless, counsel for the respondent indicates in his correspondence that "Respondent doesn't believe that the new standard makes a difference here."

The court concludes that it need not determine to what extent the Act's amendments to federal *habeas* review govern cases pending when the Act became effective, because the court finds that the standard of review now stated in new § 2254(e)(1) is not outcome determinative here. Former § 2254(d) required that a state court's determination on a question of fact "shall be presumed to be correct," 28 U.S.C. § 2254(d) (prior to amendment), unless one of eight "enumerated reasons for avoiding the presumption is present." *Wainwright v. Witt,* 469 U.S. 412, 431, 105 S.Ct. 844, 856, 83 L.Ed.2d 841 (1985). Under former § 2254(d)(8), a federal court could reject a state court's factual finding if it was "not fairly supported by the record." 28 U.S.C. § 2254(d)(8); *see Purkett v. Elem,* —— U.S. ——,

——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995); *Parker v. Dugger,* 498 U.S. 308, 320, 111 S.Ct. 731, 739, 112 L.Ed.2d 812 (1991); *Demosthenes v. Baal,* 495 U.S. 731, 734, 110 S.Ct. 2223, 2224–25, 109 L.Ed.2d 762 (1990); *Marshall v. Lonberger,* 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983); *Carriger v. Stewart,* 95 F.3d 755, 758–59 (9th Cir.1996); *Meyers v. Gillis,* 93 F.3d 1147, 1148–49 (3d Cir. 1996); *Gibson v. Bowersox,* 78 F.3d 372, 374 (8th Cir.1996), petition for cert. filed (U.S. June 7, 1996) (No. 95–9453); *Williams v. Groose,* 77 F.3d 259, 261 (8th Cir.1996); *Troupe v. Groose,* 72 F.3d 75, 76 (8th Cir.1995). Such a review required the federal *habeas corpus* court to accord the state court's factual finding "a high measure of deference." *Rushen v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983); *accord Thompson,* —— U.S. at ——, 116 S.Ct. at 464; *Sumner v. Mata,* 455 U.S. 591, 598, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982); *Meyers,* 93 F.3d at 1148–49; *Fields,* 49 F.3d at 1032; *James v. Whitley,* 39 F.3d 607, 610 (5th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1704, 131 L.Ed.2d 565 (1995). "This deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair support' in the record." *Marshall,* 459 U.S. at 432, 103 S.Ct. at 850; *see Wainwright,* 469 U.S. at 434, 105 S.Ct. at 857; *Hatch v. Oklahoma,* 58 F.3d 1447, 1471 (10th Cir.1995), cert. denied, —— U.S. ——, 135 L.Ed.2d 176 (1996); *Fields,* 49 F.3d at 1032; *Griffin v. Delo,* 33 F.3d 895, 909 (8th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1981, 131 L.Ed.2d 869 (1995).

This court will apply both the old standard of former § 2254(d)(8), and the standard now stated in § 2254(e)(1), to determine whether the outcome in this case would be the same. Thus, the court will review the findings of the state courts, according them a "high measure of deference," *Rushen,* 464 U.S. at 120, 104 S.Ct. at 456, to see if they are indeed "fairly supported by the record," or instead may be rejected by this court under former § 2254(d)(8). The court will also examine whether Spencer has met the burden imposed by new § 2254(e)(1) to rebut the presumption of correctness of the state courts' findings of fact "by clear and convincing evidence," as required by new § 2254(e)(1), if this court is to reject those findings.

rant, marijuana plants, cocaine, and several firearms were seized from Spencer's premises. On August 20, 1990, trial informations were filed charging Spencer with possession of marijuana with intent to manufacture, unauthorized possession of firearms, possession of cocaine, and possession of marijuana. Spencer privately retained attorney Richard Mock of Onawa, Iowa, to represent him and pleaded not guilty to all four charges. Attorney Mock filed a motion to suppress drugs and weapons seized during the execution of the search warrant. After an evidentiary hearing, the district court overruled the motion. A trial date was then set. On May 17, 1991, a few days before trial, attorney Mock moved to withdraw from his representation of Spencer. During the hearing on attorney Mock's motion to withdraw, the following colloquy occurred between the court and Spencer:

The court: The question is now, do you have confidence in him to defend you in the trial? That's the statement he's made.

Spencer: Well, I guess not, Your Honor.

The court: Do you agree to his withdrawal? Do you want to get another attorney or do you want to go to trial tomorrow with him?

Spencer: I feel I would be better off defending myself, Your Honor. He doesn't want to listen to what I'm telling him.

The court: My point is, I'm hesitant to let you go to trial without an attorney. If you feel you don't want him now as an attorney, I would delay the trial for a time in order for you to get another attorney.

\* \* \* \* \* \*

The court: This isn't a bond hearing. This is a question as to who you're going to go to trial with as an attorney. Reurging that, the question I have is, if Mr. Mock isn't going to represent you in this trial, then who is?

6. In 1990, Iowa Code § 815.10(2) stated as follows:

Spencer: I'll have to go pro—I'll have to defend myself.

The court: Before I would let you do that, I would appoint somebody. If your status is as it appears to be, that you have property, those will be assessed—the fees of whoever is appointed will be assessed against that.

Spencer: I don't see how you can force me to do that, Your Honor.

The court: Well, I don't think that you're in the position of being able to defend yourself. And the least I would do is have somebody appointed to sit and be available as your counsel. But, frankly, I'm not going to put the Court in the position whereby you defend yourself and then it's reversed if there is a conviction, just because there was no attorney present. It's as simple as that. Now, do you have any other person in mind?

Spencer: No, Sir.

\* \* \* \* \* \*

The court: I'm going to take a recess and see 1) what I can do about an alternate trial date, and 2) what I can do about appointing counsel. I think what I'll do is, unless you have somebody that you want to retain yourself—

Spencer: No, Sir.

The court: —I think under the appropriate code section I can appoint counsel for him, and if he has the money, it will be charged against him.

\* \* \* \* \* \*

The court: Going back on the record, it says under [Iowa Code section] 815.10(2), "If a Court finds that a person desires legal assistance and is not indigent, but refuses to employ an attorney, the court shall appoint a public defender or another attorney to represent the person at public expense. If an attorney other than a public defender is appointed, the fee paid to the attorney shall be taxed as a court cost against the person." [6]

2. If a court finds that a person desires legal assistance and is not indigent, but refuses to employ an attorney, the court shall appoint

Now, you apparently want to defend yourself, but I don't know what qualifications you have to defend yourself, so I think it's appropriate that an attorney be appointed if Mr. Mock is to withdraw. Now, my question is, do you want to go find somebody else or do you want me to appoint somebody?

Spencer: I don't want to find a lawyer.

The court: What?

Spencer: I don't want to find another lawyer.

The court: In other words, you want me to appoint somebody?

Spencer: I've already expressed an opinion I would rather do it myself.

The court: Well, what familiarity do you have with the legal system?

Spencer: I don't have any, Your Honor. Shouldn't make the legal system that way where I can't defend myself. I'm the one that's familiar with the case. I'm the one that's arrested. I know what my best interest is.

The court: Well, if I understand your complaint, you want somebody that will go in—And you're complaining that Mr. Mock—I'm not saying it's true—that he wanted to plead it and you wanted to fight it. Now, the question is, how are you going to fight it in the courtroom? My problem with it is that I don't want you to sit in the courtroom not being prepared for the procedures and end up with a verdict against you because you weren't familiar with the procedures. Do you understand what I'm saying?

Spencer: I understand what you're saying, but I don't understand why you make them that way.

The court: Why do we make what that way?

Spencer: Court procedures that way. Ordinary citizen can't come in and defend himself.

The court: An ordinary citizen can defend himself, but frankly an ordinary citizen is going to have a little difficulty following the procedures, making the proper objections and defending his own interests, unless he's familiar with the procedure in court. That's the problem I have. If you think you can do that, that's one thing; otherwise, what will happen is, if there is a conviction, it will be appealed and they will say you should have had somebody here to protect your rights.

Mr. Mock, do you have anything you want to say?

Mr. Mock: I understand his desire to represent himself, Your Honor. He is certainly familiar with the facts. But I do feel that he would be at a disadvantage if he doesn't have someone beside him to at least guide him in the procedures and at least tell him how the rules are and how the rules work.

The court: I'm going to see if I can find somebody and I'll—unless you suggest somebody.

We'll take another recess.

\* \* \* \* \* \*

The court: Okay. During the interim, the Court has attempted to contact an attorney to represent the defendant in this case. I have contacted Richard McCoy in Sioux City. He practices in criminal court and he's had a lot of cases and he's tried a lot of cases and I feel that he's a good attorney. He's indicated that he would be willing to

---

a public defender or another attorney to represent the person at public expense. If an attorney other than a public defender is appointed, the fee paid to the attorney shall be taxed as a court cost against the person.
*State v. Hindman*, 441 N.W.2d 770, 772 (Iowa 1989) (quoting Iowa Code § 815.10(2) (1989)). The pertinent provision of the Iowa Code now provides as follows:

2. If a court finds that a person desires legal assistance and is not indigent, but refuses to employ an attorney, the court shall appoint the state public defender or the state public defender's designee pursuant to section 13B.4, or an attorney pursuant to section 13B.9 to represent the person. The cost of providing legal assistance shall be taxed as a court cost against the person.
Iowa Code § 815.10(2) (1995).

take your case and he has an office in the Badgerow Building in Sioux City. Do you know where that is?

Spencer: No, Sir.

The court: That's at Fourth and Jackson Streets. He's in his office all day today and he would be willing to see you. Does that meet with your approval?

Spencer: Doesn't meet with my approval, Your Honor, but if you're going to force it on me, I'm going to have to take it.

The court: I have also indicated to him I can appreciate he wouldn't be ready for trial. The next trial date is July 9, so I'm going to continue the trial to 9:30 a.m. July 9.

Spencer: It's been almost a year now, Your Honor. I would like to get this over with.

The court: I can appreciate that, but he's going to need some time to prepare for trial. If you and he think you can go to trial before July 9, you have him get a hold of me and I'll see about getting a jury in here before that. That's not very far off. And he's a very busy lawyer and he may have other cases scheduled in between. I have selected somebody that I believe is a good criminal trial lawyer. I don't know how I can do any better for you.

And on that basis that he accepts the appointment, Mr. Mock, I'll permit you to withdraw.

\* \* \* \* \* \*

Prosecutor: I understand, Your Honor. The appointment of Mr. McCoy is pursuant to [section] 815.10(2) then?

The court: That's right.

And I can appreciate that it says, "... if a person desires legal assistance and is not indigent." As far as I'm concerned, although he indicates he wants to do it himself, I don't see that he's competent and qualified to do it himself. There should be somebody there. And on that

basis, [the] Court interprets that section to apply.

Record (May 17, 1991) at 8–19.

Approximately one year later, the case went to trial. Attorney McCoy fully represented Spencer prior to and during the trial. A jury found Spencer guilty of all charges, and he was subsequently sentenced to a term of imprisonment.

### III. CONCLUSIONS OF LAW

### (Including some further findings of fact)

Spencer contends that he is entitled *habeas corpus* relief, because the record briefly recapitulated above demonstrates that he clearly and unequivocally asserted his right to represent himself. Thus, he contends, in denying his request to represent himself, and instead appointing counsel to represent him, the trial court violated his right to self-representation guaranteed by the Sixth Amendment to the United States Constitution. The court will begin its analysis with a brief overview of the Sixth Amendment right to self-representation and then turn to consideration of the issues raised by Spencer's petition.

#### A. The Sixth Amendment Right To Self–Representation

#### 1. Nature of the right

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI; *see Gideon v. Wainwright,* 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed.2d 799 (1963). The United States Supreme Court has interpreted this constitutional provision to mean that "[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense." *Faretta v. California,* 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). In *Faretta,* the Court held that criminal defendants have the right under the Sixth Amendment to waive counsel and conduct their own defense:

The language and spirit of the Sixth Amendment contemplate that counsel

... shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

*Id.* at 820–21, 95 S.Ct. at 2533–34 (footnote and citations omitted; emphasis in the original).

### 2. *Assertion and waiver*

■ Unlike the Sixth Amendment right to counsel, which is in effect until waived, the right to self-representation is not effective until asserted. *Williams v. Bartlett,* 44 F.3d 95, 100 (2d Cir.1994); *Burton v. Collins,* 937 F.2d 131, 133 (5th Cir.), *cert. denied,* 502 U.S. 1006, 112 S.Ct. 642, 116 L.Ed.2d 660 (1991); *Stano v. Dugger,* 921 F.2d 1125, 1143 (11th Cir.) (en banc), *cert. denied sub nom. Stano v. Singletary,* 502 U.S. 835, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991); *Dorman v. Wainwright,* 798 F.2d 1358, 1366 (11th Cir.1986), *cert.*

*denied sub. nom. Dugger v. Dorman,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 801 (1987); *Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir.1982). Thus, the Eighth Circuit Court of Appeals has held, "To invoke his [or her] right to represent himself [or herself], a defendant must knowingly, intelligently, voluntarily, and unequivocally waive his [or her] right to counsel and state his [or her] intention to represent himself [or herself]." *Hamilton v. Groose,* 28 F.3d 859, 861 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995); *see United States v. Webster,* 84 F.3d 1056, 1062 (8th Cir.1996); *Reese v. Nix,* 942 F.2d 1276, 1280–81 (8th Cir.1991), *cert. denied,* 502 U.S. 1113, 112 S.Ct. 1220, 117 L.Ed.2d 457 (1992); *Meyer v. Sargent,* 854 F.2d 1110, 1114 (8th Cir. 1988); *accord United States v. Baker,* 84 F.3d 1263, 1264 (10th Cir.1996); *Fields,* 49 F.3d at 1029; *United States v. Reddeck,* 22 F.3d 1504, 1510 (10th Cir.1994); *Stano,* 921 F.2d at 1144; *United States v. Lorick,* 753 F.2d 1295, 1298 (4th Cir.), *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857 (1985); *McNamara v. Riddle,* 563 F.2d 125, 127 (4th Cir.1977).[7]

■ The right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned the decision to represent oneself altogether. *Williams,* 44 F.3d at 100; *see also United States v. Heine,* 920 F.2d 552, 555 (8th Cir.1990) (the accused "impliedly waived his right to proceed *pro se* by acquiescing to [standby counsel's] increasingly active role at trial"); *Brown,* 665 F.2d at 611 (waiver occurred where, after an initial request to proceed *pro se,* the defendant asked counsel to continue representation, but then subsequently requested to again proceed *pro se* on the third day of trial); *United States v. Bennett,* 539 F.2d 45, 50–51 (10th Cir.) (holding

---

7. As the Second Circuit Court of Appeals pointed out in *Williams,* the purpose of requiring a defendant to make an "unequivocal" request to waive counsel is two-fold:

First, unless the request is unambiguous and unequivocal, a convicted defendant could have a colorable Sixth Amendment appeal regardless of how the trial judge rules: if his request is denied, he will assert the denial of his right to self-representation; if it is granted, he will

assert the denial of his right to counsel. *See Hamilton v. Groose,* 28 F.3d 859, 862–63 (8th Cir.1994). Second, the requirement of an unambiguous and unequivocal request inhibits any "deliberate plot to manipulate the court by alternatively requesting, then waiving counsel."

*Williams,* 44 F.3d at 100–01 (quoting *United States v. Tompkins,* 623 F.2d 824, 828 (2d Cir. 1980)).

that a defendant forfeited the right to self-representation by vacillating before trial), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976).

### 3. *"Standby counsel"*

In *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the Supreme Court further delineated the rights that are to be afforded a *pro se* defendant in order to ensure that the Sixth Amendment rights outlined in *Faretta* are upheld. In *McKaskle,* the Court held that a court may appoint "standby counsel" over a defendant's objection.[8] *McKaskle,* 465 U.S. at 179, 104 S.Ct. at 951. In so ruling, the Court outlined two general limitations upon standby counsel's unsolicited participation at trial:

First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded.

Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear *pro se* exists to affirm the accused's individual dignity and autonomy.... From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself. From the defendant's own point of view, the right to appear *pro se* can lose much of its importance if only the lawyers in the courtroom know that the right is being exercised.

*McKaskle,* 465 U.S. at 178–79, 104 S.Ct. at 951 (footnote omitted; emphasis in the original).

### 4. *Impact of denial of the right*

■ If a defendant's Sixth Amendment right to represent himself or herself is violated, the defendant is entitled to a reversal regardless of whether the defendant can demonstrate prejudice. *See Flanagan v. United States,* 465 U.S. 259, 268, 104 S.Ct. 1051, 1056, 79 L.Ed.2d 288 (1984) ("right to represent oneself ... does not require a showing of prejudice to defense"); *McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8 ("The right is either respected or denied; its deprivation cannot be harmless."); *accord Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991); *Baker,* 84 F.3d at 1264; *United States v. McKinley,* 58 F.3d 1475, 1480 (10th Cir. 1995); *Peters v. Gunn,* 33 F.3d 1190, 1193 (9th Cir.1994); *United States v. Mills,* 895 F.2d 897, 902 (2d Cir.), *cert. denied,* 495 U.S. 951, 110 S.Ct. 2216, 109 L.Ed.2d 541 (1990). With this overview of the right to self-repre-

---

8. In *Faretta,* the Court pointed out in a footnote that "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46; *see generally United States v. Salemo,* 81 F.3d 1453, 1456 n. 2 (9th Cir.) ("The term 'standby counsel' refers to an attorney appointed by the court to be prepared to represent the defendant if the defendant's self representation is terminated."), *petition for cert. filed,* (U.S. Aug. 12, 1996) (No. 96–5530). As the Third Circuit has observed:

Essentially, standby counsel has two purposes—to act as a safety net to insure that the litigant receives a fair hearing of his claims and to allow the trial to proceed without the undue delays likely to arise when a layman presents his own case. Alternately, we can identify at least four functions that standby counsel can serve: (1) Standby counsel must be available if and when the accused requests help. *See Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. (2) Standby counsel must be ready to step in if the accused wishes to terminate his own representation. *See id.* (3) The court may appoint standby counsel in order to explain and enforce the basic rules of courtroom protocol to the accused. *See McKaskle,* 465 U.S. at 184, 104 S.Ct. at 954; *United States v. Campbell,* 874 F.2d 838, 849 (1st Cir.1989). (4) The court may appoint standby counsel in order to overcome routine obstacles that may hinder effective pro se representation. *See McKaskle,* 465 U.S. at 184, 104 S.Ct. at 954; *Campbell,* 874 F.2d at 849. *United States v. Bertoli,* 994 F.2d 1002, 1018 (3d Cir.1993).

sentation in mind, the court turns to consideration of the issues raised by Spencer's assertion that he was denied his right to self-representation in his criminal proceedings.

### B. Spencer's Right To Self–Representation

#### 1. Invocation of the right to self-representation

The respondent here asserts that the Iowa Supreme Court's finding that Spencer did not clearly and unequivocally invoke his right to self-representation is a finding of fact. There is no dispute on that proposition. The Eighth Circuit Court of Appeals has held that whether a defendant "clearly and unequivocally" invoked his right to self-representation is a question of fact. *Hamilton*, 28 F.3d at 862. The Fourth and Seventh Circuit Courts of Appeals have also concluded that whether a defendant invoked his right to self-representation is a question of fact. *Fields*, 49 F.3d at 1032; *Cain v. Peters*, 972 F.2d 748, 749 (7th Cir.1992), *cert. denied*, 507 U.S. 930, 113 S.Ct. 1310, 122 L.Ed.2d 698 (1993). However, in his dissent in *Fields*, Chief Judge Ervin of the Fourth Circuit Court of Appeals suggested that, "[a]s with the voluntariness of a confession, whether a defendant in a criminal proceeding has clearly and unequivocally chosen not to accept the assistance of counsel and to proceed instead by representing himself is a question that has had a 'uniquely legal dimension.'" *Fields*, 49 F.3d at 1042 (Ervin, C.J., dissenting) (quoting *Miller v. Fenton*, 474 U.S. 104, 116, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985)). This case is an example of one in which the "uniquely legal dimension" of assertion of a right to self-representation is apparent. However, the contentious issue in this case is not whether the Iowa Supreme Court's determination that Spencer did not make the necessary clear and unequivocal demand to represent himself is one of fact, but whether, as the respondent asserts, the determination of the Iowa Supreme Court is dispositive of Spencer's petition for a writ of *habeas corpus*.

#### a. The record

■ The Iowa Supreme Court found that Spencer did not make a clear and unequivo-cal request to proceed *pro se*. *Spencer*, 519 N.W.2d at 358. The record, however, shows that Spencer clearly and unequivocally requested the right to represent himself in a timely manner. It is also evident from the record that Spencer understood his right to counsel and wished to make a knowing and intentional waiver of that right. In response to the trial court's question concerning whether Spencer wanted to proceed with his current counsel, Mr. Mock, or get another attorney, Spencer stated, *"I feel I would be better off defending myself, Your Honor."* Record (May 17, 1991) at 9 (emphasis added). After further dialogue as to who was going to represent Spencer in his trial, Spencer stated, *"I'll have to go pro—I'll have to defend myself."* Record (May 17, 1991) at 11 (emphasis added). Later, after being told that the court was strongly considering appointing counsel for him if Mr. Mock was allowed to withdraw, the following colloquy occurred between the trial court and Spencer:

> The court: Now, you apparently want to defend yourself, but I don't know what qualifications you have to defend yourself, so I think it's appropriate that an attorney be appointed if Mr. Mock is to withdraw. Now, my question is, do you want to go find somebody else or do you want me to appoint somebody?
>
> Spencer: *I don't want to find a lawyer.*
>
> The court: What?
>
> Spencer: *I don't want to find another lawyer.*
>
> The court: In other words, you want me to appoint somebody?
>
> Spencer: I've already expressed an opinion *I would rather do it myself.*

Record (May 17, 1991) at 14 (emphasis added). Finally, after being given the name of an attorney the trial court had contacted during a brief recess, the following exchange occurred between the trial court and Spencer:

> The court: [The attorney]'s in his office all day today and he would be willing to see you. Does that meet with your approval?

Spencer: Doesn't meet with my approval, Your Honor, but if you're going to force it on me, I'm going to have to take it.

Record (May 17, 1991) at 17.

All told, Spencer informed the trial court on at least five occasions that he wished to represent himself. These assertions were not lost on the participants of that hearing. Mr. Mock, Spencer's counsel at the hearing, recognized the nature of Spencer's request when he answered the court's inquiry about whether he had any suggestions by stating unequivocally, "I understand his desire to represent himself, Your Honor." Record (May 17, 1991) at 16. The trial court itself recognized Spencer's statements to be requests for representation when it stated, "Now, you apparently want to defend yourself...." Record (May 17, 1991) at 14. Later, the trial court clearly recognized the nature of Spencer's assertions, because the court stated, "As far as I'm concerned, *although he indicates he wants to do it himself,* I don't see that he's competent and qualified to do it himself." Record (May 17, 1991) at 18 (emphasis added).

### b. Conclusions from the record

From this record, this court concludes that Spencer has, by clear and convincing evidence, rebutted the presumption of correctness of the Iowa Supreme Court's finding that Spencer did not make the necessary clear and unequivocal demand to represent himself. 28 U.S.C. § 2254(e)(1) (1996). To put it another way, Spencer has demonstrated that the Iowa Supreme Court's finding of failure adequately to assert the right to self-representation is "not fairly supported by the record" within the meaning of former 28 U.S.C. § 2254(d)(8).

#### ▮ i. *The trial court's inquiry.*
First, the court respectfully disagrees with the Iowa Supreme Court's conclusion that the trial court's inquiry was "proper in this case." *Spencer,* 519 N.W.2d at 360 n. 1. "Ideally, the trial court should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se." United States v. Willie,* 941 F.2d 1384, 1388 (10th Cir.1991) (citations omitted), *cert. denied,* 502 U.S. 1106, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992). Any confusion generated in this case, which purportedly involves questions concerning whether Spencer clearly and unequivocally requested the right to represent himself, and whether he understood his right to counsel and wished to make a knowing waiver of that right, would have been avoided if the trial court's inquiry in Spencer's case had come nearer to the ideal stated by the Tenth Circuit Court of Appeals in *Willie.* Here, instead of a formal and comprehensive inquiry, the court finds the state district court engaged in a much less structured inquiry without paying due regard to Spencer's responses. Although the Iowa Supreme Court found the trial court's inquiry "proper," that court stated,

> [W]e point the bench and bar to a model inquiry for situations in which a defendant asserts his right to self-representation. It is found in 1 Bench Book for United States District Judges 1.02–2 (3d ed. 1986), as well as *United States v. McDowell,* 814 F.2d 245, 251–52 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987).

*Spencer,* 519 N.W.2d at 360 n. 1. It is impossible, in this court's view, to reconcile those two positions, given that the formal, probing, and exacting inquiry set forth in the Bench Book is the very antithesis of that performed by the trial court here. For the sake of comparison, the court here sets forth the inquiry from the Bench Book:

> When a defendant states that he wishes to represent himself, you should therefore ask questions similar to the following:
>
> (a) Have you ever studied law?
>
> (b) Have you ever represented yourself or any other defendant in a criminal action?
>
> (c) You realize, do you not, that you are charged with these crimes: (Here state the crimes with which the defendant is charged.)

(d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court must impose an assessment of at least $50 ($25 if a misdemeanor) and could sentence you to as much as ___ years in prison and fine you as much as $___? (Then ask him a similar question with respect to each other crime with which he may be charged in the indictment or information.)

(e) You realize, do you not, that if you are found guilty of more than one of those crimes this court can order that the sentences be served consecutively, that is, one after another?

(f) You realize, do you not, that if you represent yourself, you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.

(g) Are you familiar with the Federal Rules of Evidence?

(h) You realize, do you not, that the Federal Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?

(i) Are you familiar with the Federal Rules of Criminal Procedure?

(j) You realize, do you not, that those rules govern the way in which a criminal action is tried in federal court?

(k) You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself? You cannot just take the stand and tell your story. You must proceed question by question through your testimony.

(l) (Then say to the defendant something to this effect): I must advise you that in my opinion you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You

are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself.

(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

(n) Is your decision entirely voluntary on your part?

(o) If the answers to the two preceding questions are in the affirmative, you should then say something to the following effect:

"I find that the defendant has knowingly and voluntarily waived his right to counsel. I will therefore permit him to represent himself."

(p) You should consider the appointment of standby counsel to assist the defendant and to replace him if the court should determine during trial that the defendant can no longer be permitted to represent himself.

1 BENCH BOOK FOR UNITED STATES DISTRICT JUDGES 1.02–2 to–5 (3d ed. 1986). The court notes that the Sixth Circuit Court of Appeals has gone so far as to invoke its supervisory powers to identify the nature of the inquiry to be made and the procedure to be followed in situations where a defendant seeks to waive representation by counsel and proceed *pro se*. In *United States v. McDowell*, 814 F.2d 245 (6th Cir.), *cert. denied*, 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987), the Sixth Circuit Court of Appeals held that whenever a federal district judge in that circuit is faced with a defendant who wishes to represent himself in criminal proceedings, the district court must engage in the Bench Book's model inquiry or one covering the same substantive points, then make an express finding that the defendant has made a knowing and voluntary waiver of counsel, prior to allowing the defendant to represent himself. *Id.* at 249–50.[9]

9. This court knows the state court judge whose actions are at issue here to be an able and highly regarded member of the judiciary. This court

also recognizes both that the issue of Spencer's desire to represent himself may not have been anticipated, and, more importantly, that the

***ii. Spencer's statements.*** Furthermore, the court notes that the Eighth Circuit Court of Appeals and other federal courts of appeals have found assertions far less direct and unequivocal than that made by Spencer here to constitute clear and unequivocal requests for self-representation. For example, in *Carey v. Minnesota,* 767 F.2d 440 (8th Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 536, 88 L.Ed.2d 467 (1985), the defendant dismissed his appointed counsel and requested that the court appoint different counsel. *Carey,* 767 F.2d at 441. The defendant stated that he felt his counsel had done an inadequate job of cross-examination at a pre-trial suppression hearing. *Id.* The court denied the request, but advised the defendant that he could conduct his own defense with his present counsel available in a standby capacity. The court then inquired whether the defendant wished to try the case himself, and he replied, "No. I don't. I want a different attorney. But since I can't have one I'll conduct my own defense, yes." *Id.* The Eighth Circuit Court of Appeals concluded that under such circumstances the defendant "knowingly and intelligently chose to represent himself and to forego the benefit of counsel." *Id.* at 442. Therefore, the court concludes that under the law of this circuit, Spencer's actions were sufficient to invoke the Sixth Amendment right of self-representation.

The decision of the Fourth Circuit Court of Appeals in *United States v. Lorick,* 753 F.2d 1295 (4th Cir.), *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2342, 85 L.Ed.2d 857 (1985), is also illustrative. In *Lorick,* at the opening of trial, the defendant claimed that "he had a problem dealing with his attorney and wished 'to do this on [his] own.'" *Id.* at 1299. The Fourth Circuit Court of Appeals recognized that "the course of proceedings as reflected in the record is obviously not the clearest," but, nonetheless, held that the defendant had made "an express and unambiguous request"

that he be permitted to proceed *pro se* at trial. *Id.* Spencer's repeated, clear assertions that he wished to represent himself go far beyond those of the defendant in *Lorick.* Furthermore, Spencer's assertions here that he wished to represent himself are far more clear, direct, and assertive than those previously held to be equivocal and wanting by various federal courts. *See Reese,* 942 F.2d at 1282 (holding that the defendant did not unequivocally and clearly invoke his right to self-representation when, after the trial court denied his request for different appointed counsel, he muttered, "I don't want no counsel then," but did not reassert it when queried by the trial court); *Burton,* 937 F.2d at 133 (holding that defendant's question, "May I represent myself?" made in response to trial court's denial of request for new counsel, was not a clear and unequivocal assertion of right to self-representation); *Tuitt v. Fair,* 822 F.2d 166, 177 (1st Cir.) (holding that the defendant's simple statement "I'd rather go pro se than have this court-appointed attorney" was equivocal on the matter of self-representation where the defendant refused to waive his right to counsel), *cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987).

Crucial to resolving the issue of the sufficiency of Spencer's invocation of his right to self-representation is the context in which that invocation arose. The court is not dealing here with an abstract constitutional theory that is subject to debate and refinement in law review articles or arguments before *en banc* appellate courts. Rather, the court is dealing with the concrete, "real world" situation in which a lay person facing criminal charges discusses his desire to represent himself with a state court trial judge. Although, as the court has suggested above, much more could have been expected of the state court judge in attempting to ascertain whether Spencer desired to represent him-

judge was acting without the guidance of the Iowa Supreme Court's suggestion that the Bench Book provides an appropriate model inquiry in such circumstances. The court further sympathizes with any judge who must attempt to " 'traverse ... [the] thin line' " between improperly denying a defendant's right to self-representation and denying a defendant's right to counsel.

*Fields,* 49 F.3d at 1029 (quoting *Cross,* 893 F.2d at 1290). This court concludes, however, that in this case, the trial judge would have been less likely to stray from the "thin line" had his inquiry more nearly approached that found in the model to which the Iowa Supreme Court has since directed the bench and bar.

self, the court concludes that no more could reasonably have been expected of Spencer in attempting to communicate his desire for self-representation to the state court judge. Indeed, in the court's view, a less clear and direct request for self-representation by Spencer, reiterated fewer times, would have satisfied the requirement that he make a clear and unequivocal invocation of his Sixth Amendment right to self-representation.

Indeed, it is difficult to imagine what more Spencer could do to inform the court of his decision to proceed *pro se.* In the face of obvious hostility to his constitutionally-protected choice to represent himself, Spencer continued repeatedly to inform the state trial court that he desired no replacement counsel for Mr. Mock and that he desired instead to represent himself. Spencer's repeated assertions could hardly have been more unequivocal. This court agrees with Chief Judge Ervin of the Fourth Circuit Court of Appeals, who wrote, " 'To invoke his Sixth Amendment right under *Faretta* a defendant does not need to recite some talismanic formula hoping to open the eyes and ears of the court to his request.' " *Fields,* 49 F.3d at 1044 (Ervin, C.J., dissenting) (quoting *Dorman v. Wainwright,* 798 F.2d 1358, 1366 (11th Cir.1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 801 (1987)). *Faretta* does not demand as a prerequisite a "Zen-like persistence in uttering a single mantra, or the ability to spout crisp legalese with full citation to binding authority," in order for the defendant's desire for self-representation to be respected. *Id.* Yet, it was with almost "Zen-like persistence" that Spencer reiterated his desire to represent himself in this case; consequently, the court cannot understand why the eyes and ears of the trial court were not opened to Spencer's request.

In light of Spencer's repeated, explicit statements that he wished to represent himself, a finding that Spencer failed clearly and unequivocally to invoke his right to self-representation is not "fairly supported by the record," and therefore that finding may be rejected by this court under former § 2254(d)(8). To put this conclusion in the affirmative terms of new § 2254(e)(1), Spenc-

er has presented abundant "clear and convincing evidence" from the record of proceedings in state court in which he explicitly asserted his right to self-representation to rebut conclusively the Iowa Supreme Court's finding that Spencer made no clear and unequivocal invocation of his right. However, not only is a finding that Spencer did not properly invoke his right to self-representation flawed as a matter of fact, the trial court's rationale for denying Spencer his right to self-representation was flawed as a matter of law.

### c. *The state trial court's rationale*

■ The trial court's reasons for disallowing Spencer's request to represent himself focused on Spencer's lack of legal knowledge and the trial court's concern that, without an attorney, Spencer would not have his day in court:

*Well, I don't think that you're in the position of being able to defend yourself.* And the least I would do is have somebody appointed to sit and be available as your counsel. But, frankly, I'm not going to put the Court in the position whereby you defend yourself and then it's reversed if there is a conviction, just because there was no attorney present. It's as simple as that. Now, do you have any other person in mind?

\* \* \* \* \* \*

*Now, you apparently want to defend yourself, but I don't know what qualifications you have to defend yourself, so I think it's appropriate that an attorney be appointed if Mr. Mock is to withdraw.* Now, my question is, do you want to go find somebody else or do you want me to appoint somebody?

\* \* \* \* \* \*

*An ordinary citizen can defend himself, but frankly an ordinary citizen is going to have a little difficulty following the procedures, making the proper objections and defending his own interests, unless he's familiar with the procedure in court. That's the problem I have.* If you think you can do that, that's one thing; otherwise, what will happen is, if there is a

conviction, it will be appealed and they will say you should have had somebody here to protect your rights.

\* \* \* \* \* \*

As far as I'm concerned, although he indicates he wants to do it himself, *I don't see that he's competent and qualified to do it himself.*

Record (May 17, 1991) at 11–12, 14–16, 18 (emphasis added).

Such reasons for disallowing Spencer to represent himself are contrary to clearly established precedent. Courts have long concluded "that a court's determination that an accused lacks expertise or professional capabilities cannot justify denying the right of self-representation." *Baker,* 84 F.3d at 1267 (quoting *Bennett,* 539 F.2d at 51); *Peters,* 33 F.3d at 1192 (indicating that the "[l]ack of legal qualifications alone cannot be a basis for refusing a defendant's pro se request."); *Orazio v. Dugger,* 876 F.2d 1508, 1512 (11th Cir.1989) (noting that legal knowledge bears no relevance to the right of self-representation); *Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir.1986) (holding that *Faretta* imposes no requisite education, background, or experience qualifications on the right to self-representation), *cert. denied,* 482 U.S. 928, 107 S.Ct. 3212, 96 L.Ed.2d 699 (1987). Such a rationale for denying a defendant's request to represent himself was considered, and rejected, by the Supreme Court in *Faretta:*

It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal conse-

quences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540–41 (citation omitted). Any prejudice that may have been visited upon Spencer as a result of his decision to forego his right to legal representation was a risk he knowingly wished to incur. Spencer may have been foolish to proceed without the benefit of counsel, but the Sixth Amendment right of self-representation applies equally to the enlightened and the foolhardy. Therefore, the trial court erred in denying Spencer his constitutional right to proceed *pro se.*

### 2. *Appointment of counsel*

The court's conclusion that Spencer did in fact make a clear and unequivocal request for self-representation does not end the inquiry in this *habeas corpus* proceeding. The respondent argues that, even if Spencer properly invoked his right to represent himself, the trial court properly appointed Mr. McCoy as "standby counsel" to aid Spencer. The respondent also argues that Spencer subsequently waived his right to self-representation by acquiescing to the actions of Mr. McCoy. Thus, the next step in this court's inquiry is to determine whether Mr. McCoy was appointed as "standby counsel," or whether appointment of Mr. McCoy was a violation of Spencer's right to self-representation.

In denying Spencer's appeal in this case, the Iowa Supreme Court stated,

We believe that the trial court did not err in appointing an attorney for Spencer. The intent behind the appointment, from the comments of both the court and Mock, defendant's withdrawing attorney, was to provide Spencer with "standby counsel" as envisioned in *Faretta* and *McKaskle.*

\* \* \* \* \* \*

The court thus properly appointed attorney McCoy over defendant's objection. If defendant had wished to treat this appointed attorney as standby counsel, he could have done so.

*Spencer*, 519 N.W.2d at 360. Clear and convincing evidence again rebuts the presumption of correctness that might otherwise attach to these findings, just as a review of the record demonstrates that these findings are not "fairly supported."

### a. The record on appointment of counsel

 As the court noted above, the trial court "may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Faretta*, 422 U.S. at 834–35 n. 46, 95 S.Ct. at 2541 n. 46; *accord McKaskle*, 465 U.S. at 184, 104 S.Ct. at 954. Although the Iowa Supreme Court's factual finding that the trial court intended to appoint Mr. McCoy as standby counsel is presumed to be correct, the Iowa courts made no actual factual finding that Mr. McCoy was appointed only as standby counsel, that the nature of Mr. McCoy's appointment as "standby counsel" was communicated to Spencer, or, more importantly, that Spencer understood that Mr. McCoy was being appointed only as his "standby counsel." Indeed, such a finding "lack[s] even 'fair support' in the record." *Marshall*, 459 U.S. at 432, 103 S.Ct. at 850 ("This deference [due state court findings of fact] requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair support' in the record."). Assuming *arguendo* that the trial court might well have intended to appoint Mr. McCoy as only standby counsel for Spencer, the trial court placed no such limitation on Mr. McCoy's appointment, nor did it effectively communicate to Spencer that Mr. McCoy's role was limited to that of standby counsel.[10] The dialogue between the trial court and Spencer clearly indicates that the trial court appointed Mr. McCoy as Spencer's counsel, not standby counsel:

> The court: Okay. During the interim, the Court has *attempted to contact an attorney to represent the defendant in this case.* I have contacted Richard McCoy in Sioux City. He practices in criminal court and he's had a lot of cases and he's tried a lot of cases and I feel that he's a good attorney. *He's indicated that he would be willing to take your case* and he has an office in the Badgerow Building in Sioux City. Do you know where that is?
>
> Spencer: No, Sir.
>
> The court: That's at Fourth and Jackson Streets. He's in his office all day today and he would be willing to see you. Does that meet with your approval?
>
> Spencer: Doesn't meet with my approval, Your Honor, but if you're going to force it on me, I'm going to have to take it.
>
> The court: *I have also indicated to him I can appreciate he wouldn't be ready for trial.* The next trial date is July 9, so I'm going to continue the trial to 9:30 a.m. July 9.

10. Before the trial court took two recesses during which it considered what it could do about appointing counsel and whom it could appoint, the trial court had cryptically remarked,

> Well, I don't think that you're in the position of being able to defend yourself. And the least I would do is have somebody appointed to sit and be available as your counsel. But, frankly, I'm not going to put the Court in the position whereby you defend yourself and then it's reversed if there is a conviction, just because there was no attorney present. It's as simple as that.

Record (May 17, 1991) at 11–12. The import of the trial court's statement may be that the it did not view Spencer as competent to defend himself and therefore Spencer would be permitted, at most, to proceed with standby counsel. However, even if this statement conveyed the trial court's *intent* to make an appointment of standby counsel, there is no evidence in the record to support a finding that the trial court communicated that intent to Spencer or that the court so limited Mr. McCoy's appointment when that appointment was actually made some time later.

Spencer: It's been almost a year now, Your Honor. I would like to get this over with.

The court: I can appreciate that, but *he's going to need some time to prepare for trial. If you and he think you can go to trial before July 9, you have him get a hold of me and I'll see about getting a jury in here before that.* That's not very far off. And he's a very busy lawyer and he may have other cases scheduled in between. I have selected somebody that I believe is a good criminal trial lawyer. I don't know how I can do any better for you.

And on that basis that he accepts the appointment, Mr. Mock, I'll permit you to withdraw.

\* \* \* \* \* \*

Prosecutor: I understand, Your Honor. The appointment of Mr. McCoy is pursuant to [section] 815.10(2) then?

The court: That's right.

And I can appreciate that it says, "... if a person desires legal assistance and is not indigent." *As far as I'm concerned, although he indicates he wants to do it himself, I don't see that he's competent and qualified to do it himself. There should be somebody there.* And on that basis, [the] Court interprets that section to apply.

Record (May 17, 1991) at 16–19 (emphasis added).

### b. Conclusions from the record

Clearly, Spencer did not view the trial court's appointment of Mr. McCoy to be for the limited purpose of acting as standby counsel. Spencer's subjective position was not unreasonable. Indeed, it is inconceivable that any reasonable person would have construed or understood the trial court's remarks to direct the appointment of Mr. McCoy as standby counsel for Spencer. Regardless of whether the court engages in a subjective or objective test here, the conclusions reached are the same: (1) that Mr. McCoy was appointed as trial counsel, not standby counsel, for Spencer; (2) that the trial court judge did not effectively convey to or inform Spencer that the appointment of Mr. McCoy was on a "standby" basis only; (3) that Spencer did not understand that the appointment was only to be for standby counsel; and (4) that no defendant in Spencer's position would have understood Mr. McCoy to be appointed only as standby counsel.

It is evident from the above-quoted portion of the record that the trial court did not speak in terms of the appointment of standby counsel.[11] First, no such express statement regarding standby counsel was made by the trial court. The trial court did not inform Spencer that he would be permitted to represent himself and that Mr. McCoy's role would be limited to that of standby counsel. If the trial court actually intended to have Mr. McCoy serve as standby counsel, one would think that, at the very minimum, the court would have explained standby counsel's limited function and role in the proceedings. As Justice Lavorato noted in his dissent,

---

**11.** As noted above, in appointing counsel for Spencer, the trial court stated,

That's right.
And I can appreciate that it says, "... if a person desires legal assistance and is not indigent." *As far as I'm concerned, although he indicates he wants to do it himself, I don't see that he's competent and qualified to do it himself. There should be somebody there.* And on that basis [the] Court interprets that section to apply.

Record (May 17, 1991) at 16–19 (emphasis added). One possible interpretation of this statement is that the trial court was interpreting Iowa Code § 815.10(2) to apply to those circumstances where the trial court appoints standby counsel over the objection of the defendant. However, for the reasons discussed above, the court finds that such an interpretation is not plausible here, given the absolute absence of any other indication that the trial court was appointing Mr. McCoy to act as standby counsel for Spencer. More importantly, even if it was the trial court's intent to appoint Mr. McCoy as standby counsel, there is nothing in the record to indicate that Spencer ever understood that Mr. McCoy was being appointed as standby counsel.

Because the role of standby counsel is severely restricted, trial courts contemplating appointment of standby counsel should—at a minimum—explain the limitations I have sketched out above from *McKaskle*. The reason is obvious: if the right to self-representation is to mean anything, a defendant who is appointed standby counsel should know how far the defendant can go in defending himself or herself without interference.

*Spencer,* 519 N.W.2d at 364–65 (Lavorato, J., dissenting). Second, and just as importantly, the trial court spoke in terms of finding "an attorney to represent the defendant in this case." This statement, in conjunction with the trial court's express statement that it did not think that Spencer was "competent and qualified" to represent himself, clearly and unequivocally indicates that Mr. McCoy's role in the case was more than that of standby counsel. Furthermore, the trial court's actions, specifically, continuing the trial date in order to permit Mr. McCoy "to prepare for trial" and telling Spencer to have Mr. McCoy contact the court if Mr. McCoy could be ready for trial before July 9, 1991, belie the notion that the trial court appointed Mr. McCoy as only standby counsel. As Justice Lavorato cogently pointed out in his dissent, "The trial court did not appoint standby counsel; the trial court simply denied Spencer's request to defend himself by forcing appointed counsel on him." *Spencer,* 519 N.W.2d at 364 (Lavorato, J., dissenting).

Therefore, this court concludes that Spencer has, by clear and convincing evidence, rebutted any presumption of correctness that might have attached to the Iowa Supreme Court's finding that the trial court had appointed Mr. McCoy as "standby counsel," rather than as Spencer's full representative. *See* 28 U.S.C. § 2254(e)(1) (1996) (a state court's findings of fact must be presumed to be correct unless the presumption is rebutted by clear and convincing evidence). To put it in terms of former § 2254(d)(8), a finding that Mr. McCoy was appointed as "standby counsel" simply is not "fairly supported by the record," because the record instead un-

ambiguously demonstrates that the trial court appointed Mr. McCoy as Spencer's counsel, not his "standby counsel," and thereby violated Spencer's right to self-representation. Indeed, the court finds the Iowa Supreme Court's finding that the trial court appointed only "standby counsel" almost irreconcilable, on logical, legal, and factual grounds, with its prior finding that Spencer never made a clear and unequivocal assertion of his right to self-representation. Absent an assertion of the right to self-representation, why would standby counsel be appointed at all? Without an assertion of such a right, no reasonable basis for the appointment of standby counsel exists. In other words, the assertion of the right to self-representation is a legal and logical prerequisite for the appointment of standby counsel. Under either the standard of present § 2254(e)(1) or the standard of former § 2254(d)(8), the Iowa Supreme Court's finding may be, and is, rejected by this court. This court instead finds that Mr. McCoy was appointed as Spencer's counsel, not his "standby counsel." Therefore, the appointment of Mr. McCoy denied Spencer's Sixth Amendment right to represent himself.

### 3. *Waiver of the right to self-representation*

 Finally, the respondent argues that Spencer abandoned his initial request to represent himself and waived his right to represent himself by permitting Mr. McCoy to represent him following the hearing. The respondent asserts that the Iowa Supreme Court's finding of waiver is a factual finding to which this court must give deference.[12] This argument is unpersuasive. First, this court notes that the United States Supreme Court and the Federal Courts of Appeals have concluded, in a wide range of contexts, that the ultimate question of waiver is not one of historical fact, but one that requires application of constitutional principles to the historical facts. *Thompson,* —— U.S. at ——, 116 S.Ct. at 465 (citing *Brewer* for the proposition that "waiver of the Sixth Amendment

---

12. The respondent, however, fails to cite any specific legal authority to buttress his proposition that a finding of waiver constitutes a finding of

"basic, primary, or historical fact" that is entitled to deference. *Thompson,* —— U.S. at ————, 116 S.Ct. at 464–65.

right to assistance of counsel is not a question of historical fact, but rather requires application of constitutional principles to facts."); *Brewer*, 430 U.S. at 403, 97 S.Ct. at 1242 (holding, in the context of waiver of the right to have counsel present at an interrogation after counsel had been appointed, that "the question of waiver was not a question of historical fact, but one which, in the words of Mr. Justice Frankfurter, requires 'application of constitutional principles to the facts as found....,'" quoting *Brown v. Allen*, 344 U.S. 443, 507, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1953)); *accord Flamer v. Delaware*, 68 F.3d 710, 719 (3d Cir.1995) (quoting *Brewer* and holding, in a case involving the question of whether the defendant knowingly and voluntarily waived his Sixth Amendment right to counsel before he confessed, that the question of waiver was not one of a historical fact), *cert. denied*, —— U.S. ——, 116 S.Ct. 807, 133 L.Ed.2d 754 (1996); *Moran v. Godinez*, 57 F.3d 690, 698 (9th Cir.1994) (holding, in a case concerning the defendant's waiver of counsel before entering a change of plea, that waiver of constitutional rights is a mixed question of law and fact), *cert. denied*, —— U.S. ——, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995); *Campbell v. Wood*, 18 F.3d 662, 672 (9th Cir.1994) (holding, in a capital case involving the question of whether the defendant properly waived his right to be present during empaneling of the jury, that "[t]he finding of a knowing and voluntary waiver is a mixed question of law and fact which we review de novo."), *cert. denied*, —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1995); *Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir.) (concluding, where the defendant contended that his waiver of his right to counsel at his criminal trial was not knowing and intelligent, that the determination of whether a waiver of the right to counsel was knowing and intelligent is a mixed question of law and fact which is reviewed de novo), *cert. denied*, 502 U.S. 930, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991); *Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir.1988) (holding, on the question of the defendant's waiver of his right to remain silent, that a finding of waiver is a mixed question of law and fact); *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1063 (11th Cir.1986) (holding, in a case in which the

defendant challenged the validity of his waiver of his right to counsel at trial, that the determination of waiver of the right to counsel is a mixed question of law and fact subject to de novo review); *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir.) (holding that, on *habeas* review, the question of whether a guilty plea—which results in a defendant's conviction as well as a waiver of his or her constitutional rights—has been entered voluntarily within the meaning of the Constitution, "is a complex one that involves questions of law and questions of fact."), *cert. dismissed*, 479 U.S. 805, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986). *But see Gomez v. Ahitow*, 29 F.3d 1128, 1134 (7th Cir.1994) (holding that findings of a state court on questions of whether a defendant understood his or her rights and knowingly and intelligently waived them are entitled to the § 2254(d) presumption), *cert. denied*, —— U.S. ——, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995). This court has been unable to find cases specifically considering whether the waiver of the right to self-representation is also one involving the application of constitutional principles to historical facts. However, this court can find no reason why the general rule, that the waiver of constitutional rights presents a mixed question of law and fact, should not apply in this context. The Supreme Court has applied this rule to the specific question of the waiver of the Sixth Amendment right to counsel. This court knows of no reason why this rule should not be equally applicable in the context of the waiver of the sister right under the Sixth Amendment, the right to self-representation.

Furthermore, the Iowa Supreme Court's conclusion, from the undisputed facts, that Spencer waived his right to self-representation cannot stand in light of other precedent. In *Orazio*, in rejecting an argument that is virtually identical to that put forward here by the respondent, the Eleventh Circuit Court of Appeals observed,

> Petitioner's request to represent himself was denied. By failing to repeat his desire to represent himself, petitioner did not vacillate on the issue. *See Chapman* [*v. United States* ], 553 F.2d 886 at 893 n. 12 [ (5th Cir.1977) ]. He did not abandon his

initial request, either. *Brown v. Wainwright,* 665 F.2d 607, 611 (5th Cir.1982). Orazio is unlike the petitioner in *Brown,* who, before the court even denied his motion for self-representation, asked counsel to represent him. Orazio acquiesced in being represented by counsel because his request to defend himself had already been denied. To avoid a waiver of a previously-invoked right to self-representation, a defendant is not required continually to renew a request once it is conclusively denied or to "make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal."

*Orazio,* 876 F.2d at 1512–13 (quoting *Dorman,* 798 F.2d at 1367, which in turn quotes *Brown,* 665 F.2d at 612); *see also Williams,* 44 F.3d at 101–02 (holding that the defendant did not waive his Sixth Amendment right to self-representation either by failing to reassert his desire to act *pro se* after his unequivocal request was denied, or by expressing his "desire to exchange one mandatory counsel for another (of his own choosing)"); *United States v. Arlt,* 41 F.3d 516, 522 (9th Cir.1994) (holding that a defendant who had unequivocally requested his right to represent himself, and whose request was denied, did not subsequently waive the right to self-representation when he moved to have the attorney appointed for him replaced by another attorney of his own choosing).

The reasoning of the Eleventh Circuit Court of Appeals is no less sound here. Spencer had clearly and unequivocally requested that he be permitted to represent himself. This request had just as plainly been denied by the trial court. Spencer clearly stated his reluctance to proceed with Mr. McCoy as appointed counsel. He stated such an arrangement "[d]oesn't meet with my approval, Your Honor, but if you're going to force it on me, I'm going to have to take

it." Record (May 17, 1991) at 17. This is not the language of waiver, but language reflecting reluctant bowing to the inevitable. *See generally Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *Edens v. Hannigan,* 87 F.3d 1109, 1118 (10th Cir.1996) (holding that waivers of constitutional rights must be voluntarily and knowingly done); *United States v. Ready,* 82 F.3d 551, 556 (2d Cir. 1996) (waivers of constitutional rights are invalid unless they are voluntary and knowing); *Finch v. Vaughn,* 67 F.3d 909, 914 (11th Cir.1995) (waivers of constitutional rights must be voluntary and knowing); *United States v. Wright,* 43 F.3d 491, 495 (10th Cir.1994) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *In re Arnett,* 804 F.2d 1200, 1202–03 (11th Cir. 1986) (a waiver of a substantial constitutional right must be a voluntary, knowing, intelligent act). The court concludes that Spencer did not waive his previously invoked right to self-representation by cooperating with defense counsel appointed over his objection. *See Orazio,* 876 F.2d at 1512–13.

As the court pointed out above, if a defendant's Sixth Amendment right to represent himself is violated, the defendant is entitled to a reversal, regardless of whether the defendant can demonstrate prejudice. *See Flanagan,* 465 U.S. at 268, 104 S.Ct. at 1056; *McKaskle,* 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8; *accord Fulminante,* 499 U.S. at 310, 111 S.Ct. at 1265; *Baker,* 84 F.3d at 1264; *McKinley,* 58 F.3d at 1480; *Peters,* 33 F.3d at 1193; *Mills,* 895 F.2d at 902.[13]

13. In denying Spencer relief on direct appeal, the Iowa Supreme Court appeared to consider that the lack of any prejudice resulting from Spencer's representation by appointed counsel somehow excused the denial of Spencer's right to self-representation:

Finally, defendant Spencer has pointed to nothing that he would have done differently had he represented himself at trial, nor has he demonstrated any way in which attorney

McCoy denied him "a fair chance to present his case in his own way." *McKaskle,* 465 U.S. at 177, 104 S.Ct. at 950, 79 L.Ed.2d at 132; *cf. United States v. Johnson,* 585 F.2d 374, 376 (8th Cir.1978) (per curiam) ("[T]here was nothing objectionable in appointing standby counsel as a precaution in case [defendant] decided at some point during the trial that he wanted counsel."), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473 (1979).

Therefore, having found a violation of Spencer's Sixth Amendment right to self-representation, the court grants Spencer's petition for a writ of *habeas corpus.*

## IV. CONCLUSION

On the threshold issue identified by the court at the outset of this opinion, the court concludes that Spencer clearly and unequivocally invoked his right to self-representation. The Iowa Supreme Court's determination to the contrary is entitled to no deference, whether the applicable standard of review here is that of former § 2254(d) or new § 2254(e)(1), because that determination is both "unsupported by the record" and has been "rebutted" by "clear and convincing evidence." The problem here was not with Spencer's efforts to invoke his right to self-representation, but with the manner in which the state trial court responded. Indeed, in Spencer's own lay rubric and unsophisticated assertion of principle, particularly in his observation that the legal system shouldn't prevent an individual from representing himself, Spencer demonstrated an uncanny appreciation and understanding of the core constitutional values reflected in his Sixth Amendment right of self-representation. The court further concludes that the trial court appointed Mr. McCoy to act as Spencer's counsel, not standby counsel, thereby violating Spencer's right to self-representation. The contrary findings of the Iowa Supreme Court again do not withstand scrutiny of the record. Finally, the court concludes that Spencer did not waive his previously invoked right to self-representation by cooperating with defense counsel appointed over his objection, because bowing to the inevitable is not the same as a knowing and voluntary waiver of a constitutional right. Because Spencer's Sixth Amendment right to represent himself was violated, he is entitled to reversal, regardless of whether or not he suffered any prejudice from unwanted representation by counsel.

Accordingly, Spencer's petition for a writ of *habeas corpus* is **granted.** However, execution of the writ of *habeas corpus* will be **stayed** for sixty (60) days from the date of this order to permit the State of Iowa to provide Spencer with a new trial or to decide not to prosecute Spencer again. If the petitioner is not provided with a new trial within the time specified, the writ will issue, and the respondent shall release Spencer.

**IT IS SO ORDERED.**

*Spencer,* 519 N.W.2d at 361. Justice Lavorato, writing for the dissenting justices, understood the majority to be basing its holding on a finding of harmless error or a lack of prejudice, because he observed,

The majority also makes much of the fact that Spencer pointed to nothing that he would have done differently as his own counsel at trial or any manner in which McCoy denied him a fair chance to present his case in his own way. This is a prejudice argument, an argument that is not appropriate when the issue is denial of a request to proceed without counsel.

As I said earlier, denial of the constitutional right to proceed without counsel is not result-oriented. So a harmless error analysis is inap-propriate when there has been a denial of such a right. A lack of prejudice analysis is akin to a harmless error analysis: both are result-oriented. It is inappropriate to apply either to a denial of the right to proceed without counsel. Either the trial court denied Spencer his constitutional right to proceed without counsel or it did not. In the case of the former Spencer is entitled to a new trial without regard to a harmless error or lack of prejudice analysis. *Spencer,* 519 N.W.2d at 366 (Lavorato, J., dissenting). Justice Lavorato's position is in keeping with federal precedents, cited by this court in the body of this opinion, which hold that relief for denial of the federal constitutional right to self-representation does not depend upon any showing of prejudice.